# Mahanoy City Borough *v.* Hersker, Appellant.

*Boroughs—License—Theater—Police power—Acts of April 3, 1851, P. L. 320, and May 5, 1876, P. L. 112.*

1. Under the Acts of April 3, 1851, P. L. 320, and May 5, 1876, P. L. 112, giving boroughs the power to regulate, license or prohibit theatrical exhibitions, a borough has the power to impose a license fee of $3.00 per day upon theatrical exhibitions.

2. The amount which a borough may ordain shall be paid for a license to give a theatrical performance is not limited to the sum which will reimburse it for the pay of the police officers which it especially delegates to watch the actors during the performance.

Argued Dec. 11, 1908. Appeal, No. 207, Oct. T., 1908, by defendant, from judgment of C. P. Schuylkill Co., July T., 1908, No. 78, on verdict for plaintiff in case of Mahanoy City Borough v. Christiana Hersker. Before RICE, P. J., PORTER,

HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ.
Affirmed.

Appeal from judgment of justice of the peace.

At the trial SHAY, J., charged as follows:

[There are at present a number of questions that come up
before the courts in relation to the powers of boroughs. There
are some powers of the boroughs that are granted by statute,
and others that a borough council has by reason of the implied
power that inures to a borough by reason of its being a munici-
pality. Now, when they pass an ordinance under implied
powers, the question of the reasonableness as to the fee charged
becomes a question for either the court or jury, as the facts
are admitted or disputed; but where a power is given by act
of assembly to a borough to pass an ordinance, as is the case
here, by the act of 1851, boroughs were empowered to license
or prohibit theatrical performances and shows, mountebanks,
jugglery, circuses and different exhibitions of that kind.

We have tried in this court one of these cases already, and
this court so held, that they had a right to pass an ordinance
under that act of assembly, and they have a right to prohibit
the performance of shows in the town, if they so see fit, under
this act of assembly; and I have in mind decisions of the courts
in the state of Pennsylvania that hold they can make the li-
cense fee prohibitive. Therefore, the evidence that was offered
by the defendant as to the reasonableness or unreasonableness
of this fee, we, as the court, think is not relevant testimony.] [8]

You have in evidence that on April 4, 1905, the borough of
Mahanoy City passed an ordinance directing a fee of $3.00 to
be paid for theatrical performances, which is the fee in ques-
tion here, I believe. Is it not so?

Mr. Lyon: Yes, sir.

The Court: And other fees; but the fee this party would
have to pay was $3.00. On March 3 of the present year there
was a theatrical performance in the opera house of the defend-
ant, and she did not take out a license under the provisions
of this ordinance. There was a license fee of $100 that was
talked of here by the defendant, but that was not under this

ordinance.   The ordinance under which that purported to be paid, or under which it would have been purported to be paid, was not approved by the chief burgess, and therefore was not an ordinance of the borough of Mahanoy City; and the only one, then, that was a legal ordinance, was this ordinance of 1905, which provided for a daily tax of $3.00 on the theater. That was not paid, as the uncontradicted evidence in this case shows, and therefore the borough is entitled to recover the penalty for which they sue.   I believe that was $5.00.

[We therefore direct the jury to render a verdict in favor of the plaintiff and against the defendant, for the sum of $5.00.] [9]

Verdict and judgment for plaintiff for $5.00.   Defendant appealed.

*Errors assigned* were (8, 9) above instructions, quoting them.

*R. P. Swank* and *C. E. Berger*, for appellant.—The borough had no power to impose a license fee of $3.00 per day: Benson v. Mayor of Hoboken, 33 N. J. Law, 280; North Hudson County Ry. v. Hoboken, 41 N. J. Rep. 71; Muhlenbrinck v. Commissioners, 42 N. J. Law Rep. 365; Stedman's App., 14 Phila. 376; Oellers v. Ritter, 5 Pa. Dist. Rep. 149; Flanigan v. Sierra County, 196 U. S. 553; Pottsville Borough v. Gas Co., 33 Pa. Superior Ct. 480; Com. v. Jackson, 34 Pa. Superior Ct. 178; Titusville v. Gahan, 34 Pa. Superior Ct. 613; Kittanning Borough v. Gas Co., 35 Pa. Superior Ct. 167; Kittanning Borough v. Water Co., 35 Pa. Superior Ct. 174; Postal Telegraph-Cable Co. v. Taylor, 192 U. S. 64; Atlantic & Pacific Tel. Co. v. Philadelphia, 190 U. S. 160; Postal Telegraph Co. v. New Hope, 192 U. S. 55.

*T. H. B. Lyon*, for appellee.—The appellant contends that the ordinance in question is a revenue measure.   This the appellee denies and claims that it is a valid exercise of the police power of the state: North Wales v. Brownback, 10 Pa. Superior Ct. 227; Wilkes-Barre v. Garabed, 11 Pa. Superior Ct. 355; Sayre Borough v. Phillips, 148 Pa. 482; Oil City v. Trust Co., 151 Pa. 454; Oellers v. Horn, 3 Pa. Superior Ct. 537;

Theater Co. v. Wcaver, 33 Pa. C. C. Rep. 241; Beer Co. v. Mass., 97 U. S. 25; Davis v. Mass., 167 U. S. 43; Cantini v. Tillman, 54 Fed. Repr. 969; Com. v. Gardner, 133 Pa. 284; Com. v. Harmel, 166 Pa. 89.

OPINION BY PORTER, J., July 14, 1909:

This case involves the validity of an ordinance of the borough of Mahanoy City, ordaining "That no theatrical exhibition, concert, show, circus, jugglery, or other exhibition shall be held, exhibited or given, without a license first had and obtained from the chief burgess." The second section of the ordinance authorizes the chief burgess to issue licenses for such theatrical and other exhibitions, upon the payment to him of a license fee, which in case of theatrical exhibitions is fixed at $3.00 per day. It was admitted at the trial in the court below that the defendant had given various theatrical exhibitions, but she based her defense upon the ground that the ordinance was invalid. The borough recovered a judgment and the defendant appeals.

The defendant offered evidence as to the number of theatrical performances given in her theater in each year, and the number of such performances given in the entire borough in each year, and, in connection with this offer of evidence, offered to prove that the borough expended no money in the exercise of its police power, in or about the conduct of such exhibitions or the supervision thereof, and that the amount of the license fee, under the ordinance, is out of all proportion to the amount expended by the borough in the exercise of any lawful police power in relation to the said business. The offer of this evidence was made in various forms, and the rejection thereof is the foundation of the several specifications of error. The contention of the appellant is that the power of a borough to impose a license fee is limited to the amount which will reimburse it for the cost of reasonable police supervision of the various theatrical performances, and in support of this contention she cites the decisions in those cases in which the power of a borough to impose a charge upon telegraph and telephone poles in the streets has been considered and defined.

The contention of the appellant is not well founded. There is no authority conferred by statute upon boroughs to regulate the poles of telegraph companies, or to require that they be removed from the borough. The authority to impose a charge upon the company for such poles has not been made the subject of express grant, but has been held to be fairly incidental to the general grant of power to regulate the streets and to be limited to the amount necessary to reimburse the borough for the cost of the police supervision reasonably requisite for the protection of the public. An illustration of the distinction between a power expressly granted and a power merely incidental to the general authority of the corporation may be found in Sharon Borough v. Hawthorne, 123 Pa. 106, and Borough of Millerstown v. Bell, 123 Pa. 151. License fees may be imposed (1) for regulation, (2) for revenue, (3) to give monopolies, (4) for prohibition. "The fourth purpose is entirely admissible in the case of pursuits or indulgences which in their general effect are believed to be more harmful than beneficial to society, and which consequently the public interest requires should be put an end to:" Cooley on Taxation, 403. The same author on pages 410 and 411 says, "When the license is for regulation merely, the limitation is one of discretion and policy, and the question presented is whether the business or occupation is one rendering special regulation important for any purpose of protection to the public, or to guard individuals against frauds and impositions, . . . . public amusements may also be forbidden with entire propriety except when licensed, inasmuch as everything of that nature has some tendency to disorder and to increased necessity for police supervision." Respecting amusements, exhibitions, etc., the authority of the corporation under the power to license has been regarded as greater than when the same word is employed as to trades and occupations: 1 Dillon on Municipal Corporations, sec. 357.

The general borough law of April 3, 1851, P. L. 320, sec. 2, granted to boroughs the power "to regulate and prohibit the exhibition of plays, shows, montebanks, juggleries and all other exhibitions within the same." The Act of May 5, 1876, P. L. 112, expressly conferred upon boroughs "the right and author-

ity to regulate, license or prohibit theatrical exhibitions, concerts, circuses, shows, montebanks and juggleries, and all other exhibitions within the limits of said boroughs," and to pass such ordinances or by-laws as may be necessary for that purpose. The borough of Mahanoy City was thus expressly clothed with power to regulate, license or prohibit theatrical exhibitions, and in the exercise of that power passed the ordinances in question. The exercise of police power directly by the legislature and by municipalities under legislative authority stands on the same ground and is subject to the same conditions: North Wales v. Brownback, 10 Pa. Superior Ct. 227; s. c., 194 Pa. 609; 1 Dillon on Municipal Corporations, sec. 308. The borough had authority to regulate, restrain and prohibit the business with which this ordinance dealt. "It is settled law that where the legislature in terms confers upon a municipal corporation the power to pass ordinances of a specific and defined character, an ordinance passed pursuant thereto cannot be impeached as invalid because it would have been regarded as unreasonable if passed under the incidental power of the corporation, or under a grant of power general in its nature. In other words, what the legislature distinctly says may be done, cannot be set aside by the courts because they deem it to be unreasonable or against sound policy:" Ligonier Valley Railroad Co. v. Latrobe Borough, 216 Pa. 221.

The power of a borough to enact ordinances relating to theatrical entertainments bears a much closer relation to that which it possesses over hawking and peddling, than to that which it may exercise over the poles of a telegraph company. The act of April 3, 1851, conferred upon boroughs authority to "make all needful regulations respecting, . . . . the hawking and peddling of market produce and other articles in the borough." Under this provision it was held that an ordinance which fixed the price of a license for hawking and peddling so high as to make, as it was evidently intended to make, the ordinance amount to prohibition, might be sustained as a police regulation, intended to destroy a business that was regarded as injurious, if it bore upon all persons impartially: Sayre Borough v. Phillips, 148 Pa. 482. The grant to the various boroughs of

the commonwealth of power to enact ordinances relating to theatrical performances is in terms broad as it can be made. They have not only the power to regulate but to license or prohibit. The exercise of this power involves matters not involved in the mere police inspection of the plays during the period they are in progress. The license fee may be fixed high for the purpose of restraining irresponsible persons and vagrant players from attempting performances: Mechanicsburg Borough v. Koons, 18 Pa. Superior Ct. 131. It may be fixed at a rate which will tend to insure respectability in the performances. The borough authorities in fixing the amount of fee to be paid for the license might properly consider the number of theatrical performances and circuses which it was desirable to have within the borough and, in the interest of public order, whether that number should be limited, and they might properly fix a fee which would place some check upon the number of such entertainments: Johnson v. Philadelphia, 60 Pa. 445. The ordinance which was considered by the Supreme Court in Warren Borough v. Geer, 117 Pa. 207, fixed the same rate per day for a person peddling shirts that the present ordinance does for theatrical performances, yet that ordinance was held to be valid exercise of the police power. The propriety of fixing a high license fee for the purpose of restraining a business has been frequently recognized in statutes, a notable instance being the Act of May 13, 1887, P. L. 108, entitled, "An act to restrain and regulate the sale of vinous and spiritous, malt or brewed liquors, or any admixtures thereof." The license fees fixed by this act were high and were different for different classes of municipalities; it was argued that this involved a violation of art. IX of the constitution, requiring uniformity of taxation, but the statute was sustained as an exercise of the police power: Com. v. McCandless, 21 W. N. C. 162. The amount which a borough may ordain shall be paid for a license to give a theatrical performance is not limited to the sum which will reimburse it for the pay of the police officers which it especially delegates to watch the actors during the performance. The specifications of error are without merit.

The judgment is affirmed.