# American Baseball Club of Philadelphia v. City of Philadelphia et al.

*Charles G. Gartling* and *Robert F. Irwin, Jr.,* for plaintiff.

*David J. Smyth,* city solicitor, and *James Hall Prothero* and *Thomas B. K. Ringe,* assistant city solicitors, for defendants.

BROWN, JR., and HEILIGMAN, JJ., July 14, 1932.—

### Statement of the pleadings

The bill, filed by the American Baseball Club of Philadelphia, prays for an injunction restraining the enforcement of an ordinance of the City of Phila-

delphia which provides for the licensing of athletic contests and exhibitions. Although The Philadelphia National League Club intervened, the testimony was offered under the averments of the bill, it being stipulated that parties would be bound by the decision in the plaintiff's case.

From the admissions in the pleadings and proofs, we make the following

## Findings of fact

1. The plaintiff, the American Baseball Club of Philadelphia, is a corporation under and by virtue of the laws of Pennsylvania, and is engaged in the business of conducting baseball exhibitions between its baseball team, known as the "Athletics," and other baseball teams of the American League, on its grounds at Greater Shibe Park, Twenty-first Street and Lehigh Avenue, Philadelphia, Pa., under a franchise from the American League of Professional Baseball Clubs.

2. The intervening plaintiff, The Philadelphia National League Club, is a corporation under and by virtue of the laws of the Commonwealth of Pennsylvania, and conducts baseball exhibitions between its baseball team, known as the "Phillies," and other baseball teams of the National League on its grounds at Broad and Huntingdon Streets, Philadelphia, Pa.

3. The defendant, City of Philadelphia, is a municipal corporation of the first class of the Commonwealth of Pennsylvania, and the other defendants are officials of the said city as respectively indicated in the caption of the case.

4. Plaintiff is the owner of the premises Greater Shibe Park, and pays to the City of Philadelphia annually in taxes approximately $17,000.

5. Greater Shibe Park is a modern fire-resisting structure with a double-deck enclosed stand on three sides and is constructed of concrete and structural steel except for the roof and press box, which are of wood.

6. On December 15, 1931, the Mayor of the City of Philadelphia approved an ordinance which had been duly passed by the city council and which was entitled:

"An ordinance providing for the licensing of athletic contests and exhibitions at which the public is charged an admission fee, and providing for a fee therefor which shall be sufficient to reimburse the city for the expense of protecting the public safety in connection with such contests and exhibitions, and providing penalties for the violation hereof."

Section one provides that all persons who or which "hold, manage, present or permit the holding of athletic contests or exhibitions to which the public is charged an admission fee shall . . . pay for each such contest or exhibition a license fee based upon a reasonable estimate of the number of police and firemen which, in the opinion of the director of public safety, are necessary to protect the public safety at and on the premises of such contests or exhibitions, at the rate per man of $5.50 per day." Section two gives the penalty for holding or presenting such contests or exhibitions without first having obtained the license therefor, and section three authorizes the Department of Public Safety to prevent such contests or exhibitions unless the license has been obtained. A true and correct copy of the ordinance is Exhibit "A" to the bill, which is incorporated herein by reference thereto.

7. Said ordinance was not introduced into city council by or at the request of the then director of public safety, who did not approve its provisions, but was drafted by a commission appointed by the president of council to look into the matter of obtaining additional revenue for the city.

8. The conducting of baseball games and exhibitions by plaintiff produces not only healthful outdoor sport, but affords health and beneficial recreation for the spectators. Such exhibitions bring many people to the City of Phila-

delphia, thereby benefiting the transportation companies and other forms of business. Daily reports of said games and exhibitions throughout the United States by the press bring the City of Philadelphia much favorable and beneficial publicity.

9. The plaintiff and the intervening plaintiff each has scheduled seventy-seven baseball games at their respective grounds for the season of 1932, and on or about April 11, 1932, each was notified by the Director of Public Safety of the City of Philadelphia that it would not be permitted to play and give its first scheduled baseball exhibition unless it applied for a license and paid as a license fee for that particular game the sum of $66, and that it would be required to pay a similar license fee for each and every of its scheduled baseball games or exhibitions for the year 1932, otherwise it would be prevented from holding said baseball games or exhibitions.

10. Plaintiff and intervening plaintiff made application for said license and made payment of said license fee of $66 under protest, and also of the sum of $66 for each and every of its scheduled games played during the season of 1932, said payments being made without prejudice to their rights to test the legality of said ordinance, and under agreement that they would be refunded in the event that the ordinance was declared invalid.

11. Plaintiff has not requested the presence of any police or firemen on its premises at Greater Shibe Park at any of its scheduled baseball games for the year 1932.

12. No firemen and only one policeman of the City of Philadelphia have been stationed on or performed any duties inside plaintiff's premises at Greater Shibe Park during the year 1932, but there have been twelve policemen assigned on the sidewalks and streets surrounding plaintiff's said premises during the playing of each and every baseball game, said policemen being second grade patrolmen, receiving a daily wage of $4.40 per day.

13. The said twelve patrolmen have performed the usual and customary police duty of handling assemblages or crowds of people, which in no wise differs from the character of duty performed on all occasions and at all locations where crowds of people assemble.

14. The number of patrolmen required at Greater Shibe Park is determined in the first instance by Inspector Rankin of the Police Department of the City of Philadelphia, and upon his recommendation the superintendent of police and the director of public safety determine the number necessary.

15. No additional police and firemen have been employed by the Department of Public Safety to carry out the terms and provisions of this ordinance.

16. Policemen are required at baseball games or exhibitions at which no admission is charged, and no license is required for those holding such baseball games or exhibitions and no license fee is paid therefor.

### Discussion

The title of the ordinance states that the fee for the licensing of athletic contests and exhibitions at which the public is charged an admission fee "shall be sufficient to reimburse the city for the expense of protecting the public safety in connection with such contests and exhibitions." The preamble refers to the necessity of the city "to furnish the services of firemen and policemen to protect the public safety . . . by assigning police and firemen to regulate traffic created thereby and to guard against fire within the premises used for such contests and exhibitions." Thus the purpose of the ordinance is clearly shown to be the reimbursement of the city for the expense of protecting the public safety by the regulation of traffic and guarding against fire. These duties are nothing more than

the performance of proper municipal functions to which the public is entitled. Taxes are assessed and paid for these very purposes.

Section one provides that all persons who or which "hold, manage, present or permit the holding of athletic contests or exhibitions to which the public is charged an admission fee shall . . . pay for each such contest or exhibition a license fee based upon a reasonable estimate of the number of police and firemen which, in the opinion of the director of public safety, are necessary to protect the public safety at and on the premises of such contests or exhibitions at the rate per man of $5.50 per day." Section two gives the penalty for holding or presenting such contests or exhibitions without first having obtained the license therefor, and section three authorizes the Department of Public Safety to prevent such contests or exhibitions unless the license has been obtained.

"Where the fee is imposed for the purpose of regulation, and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper, imposed by virtue of the police power, but where it is exacted solely for revenue purposes and its payment gives the right to carry on the business without any further conditions, it is a tax:" 17 R. C. L. 479, Sec. 7. There is no provision in the ordinance defining the manner in which the public safety is to be protected. There is no regulation of how athletic contests or exhibitions are to be conducted; no conditions are prescribed. There is no thought expressed of supervision by firemen and policemen of such contests and exhibitions. The only duties referred to are those set forth in the preamble, i. e., "to regulate traffic . . . and to guard against fire within the premises."

The regulation of traffic is the function of the police in the general discharge of their duties, and to make a special charge for such services upon any person is, in our opinion, improper. Increased traffic is the result of any assemblage of people, and to select those holding athletic exhibitions and contests for which an admission fee is charged is discriminatory. They are held for entertainment as are moving-picture shows, theatrical productions, art exhibitions and the like. Crowds assemble to view these, and to select one type of public entertainment upon which to impose a license fee is not affording the equal protection of the law, especially as the purpose of the fee is to reimburse the city for the performance of one of its general municipal functions.

It seems to us that it is discriminatory to require the assignment of police and firemen within premises where such contests or exhibitions are held, and not where moving-picture shows, theatrical productions, art exhibitions and the like are held. The fire hazard may be equally great, or, indeed, greater in the latter. Furthermore, it is a matter of common knowledge that athletic exhibitions are held in the same buildings as are used for these various purposes, and to select one form of entertainment from among a number upon which to impose a license fee is an improper imposition.

Protection against fire is provided by other laws, ordinances and regulations, which we deem unnecessary to discuss here. This ordinance attempts to set up something additional thereto, but it contains no definition of how fire is to be guarded against within the premises so used, and specifies no additional duties upon the part of the police or firemen. No conditions for the conduct of athletic contests and exhibitions are prescribed, so that the fee is not imposed for the purpose of regulation, but merely for the purpose of revenue. It is, therefore, a tax and not a license fee, and as such must fail.

Even if council had authority to impose a fee for the services contemplated in the ordinance, it had no right to delegate to the director of public safety the fixing of the amount of the license. "Notwithstanding express power may exist to

enact, the ordinance must provide a uniform rule of action; it must contain permanent legal provisions, operating generally and impartially, for its enforcement cannot be left to the will or unregulated discretion of the municipal authorities or any officer of the corporation:" 2 McQuillin on Municipal Corporations (1st ed.), 1580, Sec. 728. "To accomplish the main purpose of a license law it is apparent that it should be definite and should name a fixed fee which all persons engaged in like business shall pay, and specify every essential condition of the license. The officer should be merely entrusted with the duty of issuing licenses to all who comply with the prescribed conditions:" 17 R. C. L. 540, Sec. 57. This ordinance prescribes no conditions and provides no uniform rule of action. It does not fix the fee, but gives the director of public safety absolute discretion to determine the number of police and firemen necessary "at the rate per man of $5.50 per day." It is true that the fee is to be "based upon a reasonable estimate of the number of police and firemen which . . . are necessary," but that rests entirely in his opinion. He has thus the power to forbid the holding of an athletic contest or exhibition by the size of the fee which he determines shall be paid in each instance. Assuming that he would act in a reasonable way, yet in his zeal to protect the public safety he might well be able to justify the assignment of a number of police and firemen which would prevent the holding of the exhibition or contest, not because of anything inherently improper in such contest or exhibition, but because of the traffic created thereby. There is no restraint placed upon his will, and there is nothing in the ordinance to guide or control his judgment.

"It is clear that if an ordinance is passed by a municipal corporation which upon its face restricts the right of dominion which the individual might otherwise exercise without question, not according to any general or uniform rule, but so as to make the absolute enjoyment of his own depend upon the arbitrary will of the governing authorities of the town or city, it is unconstitutional and void, because it fails to furnish a uniform rule of action and leaves the right of property subject to the despotic will of the municipal officers, who may exercise it in accordance with some principle which it would not be within the constitutional power of the state to sanction or even so as to give exclusive profits or privileges to particular persons:" 19 R. C. L. 813, Sec. 118.

The ordinance "lays down no rules by which its impartial execution can be secured or partiality and oppression prevented. It is clear that giving and enforcing these notices [from the mayor to remove steam engines] may, and quite likely will, bring ruin to the business of those against whom they are directed, while others from whom they are withheld may be actually benefited by what is thus done to their neighbors, and when we remember that this action or non-action may proceed from enmity or prejudice, from partisan zeal or animosity, from favoritism and other improper influences and motives easy of concealment and difficult to be detected and exposed, it becomes unnecessary to suggest or to comment upon the injustice capable of being wrought under cover of such a power, for that becomes apparent to every one who gives to the subject a moment's consideration. In fact, an ordinance which clothes a single individual with such power hardly falls within the domain of law, and we are constrained to pronounce it inoperative and void:" City of Baltimore v. Radecke, 49 Md. 217, 230-231. This was quoted, with approval, in Yick Wo v. Hopkins, Sheriff, 118 U. S. 356, 372-373, where it was pointed out (page 373): "This conclusion, and the reasoning on which it is based, are deductions from the face of the ordinance as to its necessary tendency and ultimate actual operation." We deem it unnecessary, at this time, to discuss the actual opera-

tion of this ordinance because we have concluded that the ordinance itself plainly indicates its invalidity.

In O'Neil et al. *v.* American Fire Ins. Co., 166 Pa. 72, the Act of April 16, 1891, P. L. 22, providing for a uniform contract of policy of insurance, was held unconstitutional because the preparation of such policy was delegated to the insurance commissioner. Mr. Justice Williams stated (at page 79) : "The elementary books divide a statute into three parts, the declaratory, the directory and the vindicatory. In this statute the legislature furnished the first and third. It delegated the preparation of the second. . . .

"It will not do to say that the preparation of the form was an unimportant matter of detail or an act partaking of an executive or administrative character. It was the sole purpose of the act. It was the only subject named in its title. The enforcement of the standard form of policy was the only object of its penalties.

"We do not see how a case could be stated that would show a more complete and unconstitutional surrender of the legislative function to an appointee than that presented by the act." The purpose of this ordinance, as stated in its title, was to impose a license fee, and its enforcement was the only subject of its penalties. The amount of this fee was to be fixed by the director of public safety and was a delegation of power which council had no right to make.

The above views make it unnecessary for us to pass upon the reasonableness of the charge of $5.50 per man per day and whether it is discriminatory to impose a fee for the regulation of traffic upon those who charge admission and not upon those who hold athletic contests or exhibitions without charge, or for the purpose of profit.

The defendants have cited a number of cases in which franchises or special rights were granted to public service companies, but they are not analogous because there the city was disposing of its property, while here it is attempting to sell to certain individuals the duties which it must discharge for all.

Besides, those ordinances which have been sustained impose duties of regulation, inspection and supervision upon municipal and other authorities, and, as above stated, this ordinance specifies none. This is well illustrated in Tannenbaum *v.* Rehm, 152 Ala. 494, relied upon by the defendants, where an ordinance specifically stationed a fireman at a fireplug on the stage and prescribed his duties, which included inspection.

In Mahanoy City Borough *v.* Hersker, 40 Pa. Superior Ct. 50, the borough was given the power to regulate, license or prohibit theatrical exhibitions by act of the legislature, whereas the City of Philadelphia has not been granted specific power to regulate, license or prohibit athletic contests or exhibitions.

We have, therefore, come to the following

*Conclusions of law*

1. The ordinance is invalid.
2. Enforcement of its provisions should be restrained.
3. The plaintiff and the intervening plaintiff are entitled to the return of all charges or fees paid by them to the defendants under this ordinance.

*Decree nisi*

And now, July 14, 1932, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the Ordinance of the City of Philadelphia of December 15, 1931, set forth in Exhibit "A" of the plaintiff's bill of complaint, is invalid and void; that the defendants, their and each of their officers, agents, attorneys and employes, be and they are hereby enjoined and restrained from enforcing the provisions of the said ordinance and from collecting from plaintiff and intervening plaintiff fees or charges provided for in

said ordinance because of any failure on the part of said plaintiffs, or either of them, to pay the fees or charges provided in said ordinance, and it is further ordered, adjudged and decreed that the said defendants shall return and pay forthwith to the plaintiff and intervening plaintiff all charges or fees heretofore collected from either of them.

The defendant, the City of Philadelphia, shall pay the costs of these proceedings.

### Opinion and order sur exceptions to adjudication

BROWN, Jr., J., October 28, 1932.—The exceptions filed by the defendants to the adjudication were argued before the entire court in banc, and we are of the opinion that they should be dismissed.

The Ordinance of the City of Philadelphia of December 15, 1931, providing for the licensing of athletic contests and exhibitions, at which the public is charged an admission fee, was declared to be invalid by the trial judges for the reasons stated by them in their discussion, which we approve and adopt.

Exceptions 1 to 9 are to findings of fact made by the trial judges, and as there is ample evidence to support them, we approve and adopt them.

Exceptions 10 to 27 are to the refusal of the trial judges to make findings of fact, requested by defendants, having to do with the abuse of discretion of the director of public safety in enforcing the ordinance and the reasonableness of the charge of $5.50 per man per day provided for in the ordinance. The invalidity of the ordinance appears upon its face. As stated by the trial judges, "we deem it unnecessary . . . to discuss the actual operation of this ordinance because we have concluded that the ordinance itself plainly indicates its invalidity," and "the above views make it unnecessary for us to pass upon the reasonableness of the charge of $5.50 per man per day." Hence, no findings of fact are necessary upon these points.

Exceptions 28 to 30 relate to conclusions of law by the trial judges, and exception 31 to the decree nisi. For the reasons given by them, we approve and adopt their conclusions and the form of decree to be entered.

Exceptions 32 to 43 are to the failure of the trial judges to affirm defendants' requests for conclusions of law. Defendants' requests eight and nine (exceptions 39 and 40) relate to the source of the ordinance. As this did not enter into the conclusions of the trial judges, it seems that they are not now material. The other exceptions in this group pertain to matters discussed and determined by the trial judges, with whom we are in accord, and for the reasons given by them, to some of which we have referred specifically, we are of the opinion that their conclusions properly determine the issues raised.

### Final decree

And now, October 28, 1932, upon consideration of the foregoing case, it is ordered, adjudged and decreed that the Ordinance of the City of Philadelphia of December 15, 1931, set forth in Exhibit "A" of the plaintiff's bill of complaint, is invalid and void; that the defendants, their and each of their officers, agents, attorneys and employes, be and they are hereby enjoined and restrained from enforcing the provisions of the said ordinance, and from collecting from plaintiff and intervening plaintiff fees or charges provided for in said ordinance because of any failure on the part of said plaintiffs, or either of them, to pay the fees or charges provided in said ordinance, and it is further ordered, adjudged and decreed that the said defendants shall return and pay forthwith to the plaintiff and intervening plaintiff all charges or fees heretofore collected from either of them.

The defendant, the City of Philadelphia, shall pay the costs of these proceedings.