Warner Bros. Theatres, Inc., *v.* Pottstown Borough et al., Appellants.

92

Argued October 6, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*C. Edmund Wells,* for appellants.

*Louis J. Goffman,* with him *Morris Wolf, Maxwell Strawbridge* and *Wolf, Block, Schorr & Solis-Cohen,* for appellee.

OPINION BY HIRT, J., January 14, 1949:

There are two motion picture theatres in the Borough of Pottstown, one of which is Strand Theatre owned and operated by the appellee, Warner Bros. Theatres, Inc. On December 30, 1946, the borough enacted an ordinance imposing a so-called "annual license fee" on a number of "enumerated amusements, devices, busi-

nesses, entertainments, or public performances", on the authority of Article XII, § 1202, cl. XXVI of The General Borough Act of May 4, 1927, P. L. 519, as amended, 53 PS § 13338. The ordinance purported to impose a license fee on motion picture theatres, measured as to amount by 5% of the gross admission receipts, payable monthly. Under prior ordinances the license fee of Strand Theatre had been $100 per year. Based upon the gross intake of that theatre for the previous year, appellee's license fee for 1947 under the ordinance would have amounted to more than $11,000; on the same basis the annual license fee of the other motion picture house would have been more than $5,000. Together, the cost of their licenses would be more than eighty times the former fees. The Warner corporation in February 1947 appealed to the quarter sessions, in the form of a complaint under Article X, § 1010 of The General Borough Act as amended; 53 PS § 12900, questioning the legality of the ordinance. The appeal was heard by Judge DANNEHOWER of the court below, who found the allegations of the complaint sustained by the evidence and concluded that the ordinance was "arbitrary, oppressive, unreasonable and discriminatory" and that its purpose was not to regulate "the motion picture business, but to provide revenue for general borough purposes". On these grounds the court declared the ordinance illegal, void and of no effect as to the complainant. Our jurisdiction in this appeal of the borough from that order is not limited merely to a review of the regularity of the proceedings on narrow certiorari. Under the Act of April 18, 1919, P. L. 72, 12 PS § 1165, it is for us to examine the testimony as on an appeal from a judgment entered upon the verdict of a jury in an action at law and to decide the case on its merits. *In Re: Appeal of Bender,* 106 Pa. Superior Ct. 376, 163 A. 47. From a consideration of the entire record we find ourselves in complete accord with the findings and conclusions of the lower court. The order will be affirmed.

Reference to a few salient facts, found by the lower court on unquestionable testimony, will demonstrate the propriety of the order. The Borough of Pottstown has a population of approximately 25,000. Its affairs are administered by a Borough Manager aided by two assistants. The total cost of borough administration for 1946, including all salaries, was $12,920.52. In the same year the cost of maintaining the police department was $28,007.57; and the cost of fire protection was $22,534.93. There are a maximum of 21 police officers and two paid firemen in these departments. The cost of maintaining the above departments and all other undertakings of the borough have been met from the revenue receipts of the borough principally from taxes on real estate. Appellee's two evening shows undoubtedly add to the crowds attracted to the business section of the borough. To control all vehicular and pedestrian traffic, in the evening, a police officer is stationed at each of the four principal street intersections of the borough. There is no evidence that, but for the theatres, such traffic regulation would be unnecessary. On the last three days of each week, when theatre attendance is at its peak, extra policemen are assigned to the business section on general duty but with special instructions to take care of the "theatre crowds". On occasion the borough also provides a policeman to accompany the theatre's representative to the bank for the purpose of making a night deposit of the day's receipts. Twice each week the chief of the borough fire department with his assistant, inspects the theatre and they are usually accompanied by a police officer.

The license fee here can be justified, if at all, only under a proper exercise of the police power. One of the tests of propriety is whether the size of the license fee exacted has a reasonable relation to the borough's cost of regulating motion picture theatres, in the public interest. The primary object of a license tax is to regulate and control the business affected and "if the amount of

a 'license fee' is grossly disproportionate to the sum required to pay the cost of the due regulation of the business the 'license fee' act will be struck down": *Flynn et al. v. Horst et al.*, 356 Pa. 20, 51 A. 2d 54. A license ordinance stands on the same footing as an Act of the Legislature.

The terms of the ordinance do not provide for any special services and none are supplied; the license fee, therefore, cannot be justified on the ground that it will repay the borough for the cost of special services rendered. Cf. *Amer. B. Club of Phila. et al. v. Phila. et al.*, 312 Pa. 311, 167 A. 891. The borough on request supplies police protection to anyone carrying funds to a bank for deposit. And traffic regulation peculiar to the control of the patrons of a theatre or of any other business enterprise in the borough, except under unusual circumstances, is the obligation of the municipality. The same may be said of the duty of the borough to provide fire inspection. These are general services within the purposes for which real estate taxes are levied. Appellee's annual real estate tax on its theatre building is about $1,925 which, we may assume, is its just share of the cost of general fire and police protection throughout the borough, including traffic control. The motion picture business is legitimate and every unreasonable restriction of it is unlawful. Cf. *Mahanoy City Boro. v. Hersker*, 40 Pa. Superior Ct. 50. The total of all license fees under all prior borough ordinances, never exceeded $1,650 in any one year. The single license fee here involved, of almost seven times that amount, is grossly in excess of the justifiable cost of police regulation of the theatre in question. On that ground alone the ordinance is invalid. *Rock v. Philadelphia*, 127 Pa. Superior Ct. 143, 191 A. 669, affirmed in 328 Pa. 382, 196 A. 59, on the opinion of Judge CUNNINGHAM, is additional authority for the conclusion.

Since the license fee so greatly exceeds the cost of inspection and regulation it is too clear for argument

that raising revenue was the purpose of the ordinance and not police control in the public interest. The borough's power to tax is limited to the specific legislative grants of The General Borough Act, and on the date of the ordinance there was no legislative authority either in the Code or in any other Act for the levy of an amusement tax by a borough on theatre admissions. The license fees of the two motion picture theatres in the borough, together, were in excess of the total annual cost of administering all of the affairs of the borough. The present ordinance, in imposing taxes under the guise of license fees, so unreasonable in amount, was a measure to provide revenue for general borough purposes and was invalid also on that ground. Mr. Justice ELKIN in *Kittanning Boro. v. Nat. Gas Co.*, 239 Pa. 210, 86 A. 717, stated the controlling principle, in language frequently quoted, thus: "If anything can be considered as settled under the decisions of our Pennsylvania courts it is that municipalities under the guise of a police regulation cannot impose a revenue tax." This limitation of authority is equally applicable to the state, or a borough or other municipality as a subdivision thereof. *Rock v. Philadelphia,* supra.

Order affirmed.