## Crawford et al. v. Wesleyville

*Robert H. Chase*, for appellant.

*Wayne A. Gleeten*, for Borough of Wesleyville.

LAUB, J., June 16, 1949.—Ordinance No. 192 of the Borough of Wesleyville imposes a license fee on land-owners and tenants of land for the privilege of keeping or permitting on their property inhabited trailers and vehicles capable of being moved in their habitable state. Four residents of the borough have separately appealed from the ordinance, and these appeals are what we are presently considering. Since substantially the same questions are raised in each case and since the basic

facts are essentially identical, we shall discuss the appeals collectively but shall enter separate orders in each instance.[1]

From a factual standpoint it must first be observed that each appellant represents a different class. Appellant Decker rents his land to trailers for profit and has on his property, in addition to trailers, a number of tourist cabins which he also rents to the public. Appellant Crawford rents his land to trailers for profit but has no cabins. Appellant George owns his own land and lives in his own trailer thereon. Appellant Steele owns a trailer but no land, his vehicle being placed upon the land of Crawford.

The other facts as we find them are: The Borough of Wesleyville is a community of about 2,800 inhabitants, containing approximately 850 dwelling houses. Of recent years the population of the borough has been increased by an influx of people living in house trailers. This increase is by no means stable or constant, since many of the trailers come and go at the instance of necessity or caprice. At the time of the hearing held in these cases there were approximately 165 trailers within the borough limits. The population of these trailers was estimated at from 395 to 400 people.

Early in 1948 it became apparent to the borough that house trailers were putting a strain upon certain municipal services. It was found necessary to buy a larger and more modern fire truck because the trailer dwellers were using oil for fuel and were storing it in drums in hazardous proximity to nearby homes. For reasons of safety, an additional fire hydrant was installed to meet an anticipated emergency. Police supervision was intensified, and because of the increased demand upon police facilities the night policeman was

---

[1] The companion cases are filed to no. 64, 65 and 66, May sessions, 1948, respectively.

required, at the expense of the borough, to use an automobile in making his rounds, whereas he formerly made them afoot. In addition to this, the borough had found it necessary to install a playground for the benefit of trailer-dwelling children since to reach the existing playground they had to cross a through highway which bisects the borough.

The borough disposes of its sewage through the sanitation system of the City of Erie, paying for the services on a gallonage basis, the sewage being measured by a meter at the point where it enters the Erie system. The increased population caused by the advent of the trailers thus naturally increased the cost to the borough for disposal of this sewage. A more easily demonstrable increase occurred in the cost of trash and garbage removal. Both services are done on contract. Early in 1948 the contractors demanded and received increases in their contracts due entirely to the larger amount of refuse caused by the trailer camps. The garbage contract was increased by $1,200 and the trash contract was increased by $261.

Because of these increased hazards and the inordinate demand for borough services, the borough council enacted Ordinance No. 192 which is the bone of present contention. For the avowed purpose of protecting the health, safety and welfare of the people, the ordinance in substance makes it unlawful for the possessors of land to keep or permit thereon any inhabited mobile vehicle for a period in excess of 336 hours without securing a license therefor. The license fee is fixed at $12 for each licensing period of six months, but provision is made for refunds at the rate of $2 per month in those instances where occupancy does not continue for the full licensing period. Section 7 of the ordinance requires the burgess to cause frequent inspection of licensed premises for the purpose

of protecting the health and safety of the people and to insure the enforcement of the act.

The actual cost of putting the ordinance into operation was negligible, the total actual outlay for supplies, initial inspection, etc., amounting to but $74.15. Additional to this was an unnamed expense due to a raise in salary to the borough treasurer to compensate him for making out licenses and paying refunds. From a health inspection standpoint, there is no expense to the borough since such inspections are made by the Commonwealth without cost to the municipality.

Because during the first year of its operation the ordinance produced $2,410 in license fees, appellants contend that the income is grossly disproportionate to the amount needed to administer the ordinance; that it is a revenue measure and not a licensing act and is unconstitutional as an invalid exercise of the police power. It is also challenged on the ground that it is discriminatory since no licenses are required for tourist cabins. This latter objection may be disposed of at this point, for if the act is a proper police measure, the fact that other somewhat but not exactly similar places are not required to be licensed is not fatal: Adams v. New Kensington, 357 Pa. 557.

This ordinance does not in its entirety attack solely the mephitic aspects of trailer camps conducted for profit. It cannot be gainsaid that such camps do, at times, because they frequently attract a nomadic, promiscuous and careless population, make difficult the enforcement of police and sanitary regulations. For these reasons licensing ordinances for such camps have uniformly been held valid. See Cady v. City of Detroit, 289 Mich. 499, 286 N. W. 805, White v. City of Richmond, 293 Ky. 477, 169 S. W. (2d) 315, and Nichols v. Pirkle, 202 Ga. 372, 43 S. E. (2d) 306.

However, the borough, in its attempt to regulate the conduct of the commercial trailer camp has over-

reached itself by including within the ordinance things which are not subject to licensure. The application of the provisions of the act to the case of appellant George is illustrative of this. George not only owns his own trailer but keeps it upon his own land. The trailer is the only habitation which he and his family occupy. It is as much his home as the most pretentious dwelling in the borough. Judge Arnold, speaking for the Superior Court in Lower Merion Township v. Gallup, 158 Pa. Superior Ct. 572, said this of house trailers (p. 575):

"To say that these were not dwelling houses is an attempt to fictionalize a reality. They were used and intended to be used as homes, and were as much dwellings as any similarly sized structures could be. In fact they contained household conveniences rarely present in houses so small. They differed from the ordinary house only in respect to the ease with which they could be moved."

The effect of this ordinance as to appellant George is that the borough is licensing his right to establish his own home on his own land. Unquestionably, the right to have a home can be licensed only where conditions prevail which take the home out of the ordinary category, as for example where it is used for such commercial enterprise as a boarding or rooming house. We recognize that the police power is dynamic but we also recognize that this power is not paramount to the Constitution and is necessarily fettered by the reasonableness of the regulations sought to be imposed. As stated by the Supreme Court in Flynn et al. v. Horst et al., 356 Pa. 20, 31:

"The reasonableness of 'a police regulation' of any business depends chiefly on the circumstances on which the regulation operates. No police regulation should be allowed to 'interfere with the enjoyment of individual rights beyond the necessities of the case':

Reduction Company v. Sanitary Works, 199 U. S. 306, 318."

Conceding the right in the borough to control the placing of these trailers within the borough limits by a zoning ordinance, such as obtained in Lower Merion Township v. Gallup, supra, the fact still remains that if the trailer is legally placed it cannot be licensed for use as a home. Shelter in this climate is an absolute necessity to survival. The right to live in a home is not a privilege which is subject to license; it is a human right. This ordinance, then, in this respect transgresses section 1 of article I of the Constitution of the Commonwealth, which provides:

"All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness."

Furthermore, by viewing a trailer as a house it can be seen that this ordinance violates the fourteenth amendment to the United States Constitution by depriving one class of citizens of the equal protection of the laws. A municipality is powerless to discriminate between citizens similarly situated: Sayre Borough v. Phillips, 148 Pa. 482. Any discrimination, if not based upon reasonable and just classification, is a denial of equal protection and is unconstitutional. This ordinance, as to the land-owning citizen who lives in a trailer on his own property, is discriminatory since it imposes burdens upon him which it does not impose upon those who own their own land and live thereon in a more permanent type of abode.

But we see no constitutional objection to enforcement of this ordinance as a police measure against those who operate trailer camps for profit. When one encourages, for business reasons, the use of his land

in such a fashion as to increase hazards to the health, safety and morals of a community, he may not be heard to complain that a licensing ordinance compels him to pay for the increased borough services which his action demands. There is no kinship between his situation and that of appellant George, for in the one instance the license is for the use of property for a home, while in the other it is for a business which affects the public. In the latter case, municipal facilities are a portion of the licensee's stock in trade. The proximity of police and fire protection, the facility with which refuse and garbage are disposed of, and all other municipal services are matters which induce trailer owners to patronize a trailer camp and thus produce the hazards which this ordinance seeks to control. In American Baseball Club et al. v. Philadelphia et al., 312 Pa. 311, a license tax imposed by the municipality upon baseball exhibitions was upheld on the theory that such exhibitions imposed extraordinary burdens upon the municipal facilities. In that case the testimony established that it was necessary for the city to detail a large number of policemen to maintain order and direct traffic, etc., at baseball games, and therefore the general cost of the police department was increased. Similarly, in William Laubach & Sons v. Easton, 347 Pa. 542, where a municipal ordinance providing for the installation of parking meters was attacked as an invasion of the rights of all users of the public highways, the ordinance was upheld as a valid exercise of the police power. It was there again declared that those who are responsible for the creation of extraordinary problems requiring municipal attention must pay for the services which they by their acts create. It appears to us that the principles of these two precedents are manifestly applicable to the situation now before us. In attaching a license fee to a trailer camp there is no charge for

"general services within the purposes for which real estate taxes are levied" as was held by the Superior Court in Warner Bros. Theatres v. Pottstown, 164 Pa. Superior Ct. 91. It is true that police, fire and sanitary protection are general services to which each citizen is entitled, but no citizen has the right to command, for his special benefit, increased or added services, the expense of which falls upon his neighbor. In the Pottstown case the services were neither extraordinary nor unusual and were the same as afforded to other unlicensed businesses. For this reason, plus the exorbitant size of the license fee, the licensing of appellant's theatre was there held invalid.

The fact that this ordinance is unconstitutional in its application to one appellant does not necessarily make it unconstitutional for all purposes. The general rule is that if the questioned act is constitutional in regard to its paramount purpose it should not be stricken down merely because its application would in some instance be unconstitutional: Rothermel v. Meyerle, 136 Pa. 250; Grisbord et al. v. Philadelphia et al., 148 Pa. Superior Ct. 91.

"It is elementary that a statute may be in part constitutional and in part unconstitutional, and in the event that the various parts of the statute are independent of each other, that which is constitutional will prevail and that which is unconstitutional will be rejected. . . . Particularly is this true when the act in question contains a 'severability clause' ":[2] Rutenberg et al. v. Philadelphia et al., 329 Pa. 26, 39.

The objectionable feature of the present ordinance insofar as it concerns the class of citizens represented on the record by appellant George can be eliminated simply by striking down the words "to keep or" as they appear in section 1, so that this section will

---

[2] The ordinance here involved contains the customary severability clause.

simply require a license in those instances where others are permitted the use of the taxpayer's land for the placing of trailers. The fact that the objectionable material appears in the same section as the enforcible portion of the ordinance is of no importance: Rothermel v. Meyerle, supra.

The problem raised by the size of the license fee leads us along a well-trod legal pathway. As early as the year 1913, the status of the law had so far crystallized as to justify Mr. Justice Elkin, in Kittanning Borough v. American Natural Gas Co., 239 Pa. 210, 211, in saying:

"If anything can be considered as settled under the decisions of our Pennsylvania courts it is that municipalities under the guise of a police regulation cannot impose a revenue tax. This principle has been so uniformly and repeatedly asserted that it is unnecessary to cite authorities in support of it." This is still the law: Flynn v. Horst, supra, p. 28.

"A license fee is a charge which is imposed by the sovereign, in the exercise of its police power, upon a person within its jurisdiction for the privilege of performing certain acts and which has for its purpose the defraying of the expense of the regulation of such acts for the benefit of the general public . . .": Pennsylvania Liquor Control Board v. Publicker, 347 Pa. 555, 560.

There is nothing improper about the requirement of a license fee in these cases unless it is manifestly disproportionate to the services rendered. If such disproportion does appear, then the "fee" loses its identity and becomes a tax, an anomaly to a police measure. The presence of trailers upon the land of the taxable in this instance has had no effect upon the assessment of the property for tax purposes, and indeed, because of the itinerant character of the

trailers, we can see some legal and practical difficulties which would arise should such an assessment be attempted. It thus appears that there is no contribution in the way of revenue taxes made by these land owners for the inordinate demand which the use of their land makes upon the borough. The objection, therefore, which was raised in the Pottstown case could have no application here. In our opinion the extraordinary borough services commanded by these camps amply justify the size of the license fee. The revenue derived from the license is not disproportionate to the services rendered. It is unfortunate that the borough officers, in computing the size of the fee which would be charged, approached the problem in a manner which might give rise to the conclusion that they were seeking revenue only. Their approach, however, has no bearing upon the statute and its intention as ultimately enacted.

Appellant Steele is not taxed by this ordinance at all and, in consequence, is not affected by those provisions of the ordinance which require a license fee. It is obvious, therefore, that his appeal must be dismissed.

By stipulation filed of record in these cases, the hearing judge alone is authorized to dispose of the appeals subject to the right of the parties to file exceptions to his decree and to have the same heard by the court in banc.

And now, to wit, June 16, 1949, the appeal is dismissed at the cost of appellant.

*Order*

And now, to wit, June 16, 1949, for the reasons stated in the opinion filed today to No. 63 May sessions 1948, the appeal is dismissed at the cost of appellant.