## McKee v. Upper Darby Township

*Vincent B. Mancini,* for plaintiffs.
*Bruce A. Irvine,* for defendant.

TOAL, *J.,* October 20, 1982—This case involves the validity of an ordinance enacted by Upper Darby Township in 1972 requiring all owners of "multiple

dwelling units" in Upper Darby to be licensed by the Upper Darby Township Department of Health. At issue is a 1978 amendment to the ordinance raising the licensing fee from $4 to $10 per unit.

Plaintiff, Frank McKee, is the owner of three separate apartment complexes in Upper Darby Township which comprise 402 dwelling units. Plaintiff, Harrison Arms, Inc., of which McKee is a shareholder and officer, owns another apartment complex in Upper Darby Township containing 36 dwelling units. Thus, the total number of dwelling units owned by plaintiffs is 438.

On November 21, 1972, defendant, Upper Darby Township, enacted Ordinance 2295 for the purpose of regulating all residential buildings and structures within the township and providing penalties for the violation thereof. Section 12.01 of the ordinance required all "multiple dwelling units" to be licensed by the Department of Health in order to be operated. Section 12.06 provided for a $4 per dwelling unit licensing fee which was to be renewed every year. The units owned by plaintiffs in this case constitute "multiple dwelling units" as that term is defined in Ordinance 2295. To guarantee that living conditions meet the standards required by the regulations, the ordinance required several inspections each year at all multiple dwelling units in Upper Darby Township prior to the issuance of a license.

On December 20, 1978, Upper Darby Township passed Ordinance 2533 which amended Section 12.06 of Ordinance 2295 by requiring that the license fee be raised from $4 to $10 per unit in every multiple dwelling which must be licensed in Upper Darby Township. Under the ordinance, as amended, plaintiffs have paid $4,380 in licensing fees for the years 1978 through 1981. In 1978, they filed

this action in equity, challenging the validity of the $10 per unit licensing fee.

Plaintiffs assert two separate arguments in support of their claim that the fee is invalid. First, they claim the fee is an attempt by Upper Darby Township to recoup costs of "general services" already provided by the township and paid for by plaintiffs by virtue of their real estate taxes. Hence, the licensing fee is an unauthorized attempt by the township to raise general revenues. Second, plaintiffs contend that even if "special services" are made necessary by Ordinance 2295, the fees assessed for these services far exceed the actual costs needed for the enforcement and regulation of Ordinance 2295.

The services for which a fee may be charged must be "special" or unusual in the sense that it is furnished specially under the ordinance for which the fee is required and only to the licensee. Warner Bros. Theatres v. Borough of Pottstown, 164 Pa. Super. 91, 63 A.2d 101 (1949). The services must not be "otherwise furnished or required" by the municipality supplying the special services. University Park Cinemas, Inc. v. Borough of Windber, 59 D.&C.2d 726, 735 (1972). This is the legal standard by which plaintiffs' first argument must be judged.

Plaintiffs' claim that the services rendered by the township are "general" rather than "special" is without merit in light of the facts stipulated to by the parties and established at trial. Plaintiffs claim that all residences, both single family and multiple dwelling units, are subject to the regulations set forth in Ordinance 2295. Furthermore, they claim that because the ordinance does not require a license fee from single family residences it can be inferred that the services rendered thereunder are covered by the real estate taxes paid by all landowners in Upper Darby Township. However, plaintiffs

have overlooked an essential difference in their equation of the services given to single family residences and "multiple dwelling unit" structures. Usually, when living conditions at a single family residence fall below the required regulations, the occupants of the premises are responsible for remedying such problems. They will not look to the Health Department for enforcement of the regulations against themselves. However, quite a different situation occurs in the landlord-tenant context where multiple dwelling units are involved. There, the Health Department, through its inspections and the enforcement of its regulations, provides an effective means by which a tenant can be ensured that living conditions at his dwelling will remain at the level required by the housing ordinance. Failure to correct a faulty condition in a single family dwelling generally results in harm only to that party responsible for the repair. But when owners of apartment complexes fail to remedy conditions which fall below the standards set by the Health Department, third persons, i.e., tenants, suffer the harm. In such cases, recourse to the Upper Darby Health Department is necessary for a renter's protection. The basis for a distinction between multiple dwelling units and single family residences, with reference to the licensing fee charge, is readily apparent in light of the need for the inspections and enforcement of regulations in both types of dwellings.

Thus, while single family homes are also governed by the regulations set forth in Ordinance 2295, the "special services" required for its enforcement in multiple dwelling units, i.e., inspections and licensing, are not necessary with respect to single family residences. While minimal use of general revenues, in the form of real estate taxes, may be necessary to cover the costs of enforcing Ordinance

2295 in single family dwellings, such expenditure is insignificant in comparison with the expenses involved in enforcing the ordinance in multiple dwelling units. The fee for such inspections and licensing "is not regarded as in any sense a revenue-producing measure or as the imposition of a tax. It is merely making the person who causes the expense pay for it." Aaronson v. Philadelphia, 16 D.&C. 427, 432 (1932).

A further distinction, relative to the above discussion, is the increased risk of public harm involved when regulations are not enforced in multiple dwelling units. These risks must be contrasted with the possibility of public harm involved with the nonenforcement of regulations in single family homes. It is obvious that public exposure to harm would be greatly enhanced if a 400 unit apartment complex were unregulated by the township. Clearly, the dangers presented in such a situation far exceed those dangers an unregulated single family home pose to the public. Thus, the increased need for public protection also becomes an important factor for consideration when determining the reasonableness of the distinction made by Upper Darby Township between the licensing of multiple dwelling units and the nonlicensing of single family homes.

Plaintiffs next contend that if, in fact, "special services" are provided by the township, the $10 per unit fee is excessive in relation to the actual cost of those services. The fee charged need not be exactly commensurate with the services rendered; rather, the township must be given latitude and the fee must only be reasonably related to the costs incurred by the township. Commonwealth ex rel. Hines v. Winfree, 408 Pa. 128, 182 A.2d 698 (1962).

Evidence produced at trial in the form of the testimony of George Harris, the Director of the Upper Darby Department of Health, and the financial records of the Department of Health reveal that enforcement of Ordinance 2295 makes up approximately sixty percent of the department's workload. However, the fees generated by the licensing under the ordinance amount to approximately 40 percent of the department's budget since the amendment increasing the fee from $4 to $10 was enacted. Furthermore, these figures do not include department allowances for the inspectors' mileage, fringe benefits of the Health Department employees, legal fees for enforcing the ordinance, etc. Thus, in light of the reasonable latitude which must be given a municipality in anticipating the costs of enforcing an ordinance, Winfree, supra, we are unable to conclude that the figures established indicate such a disparity as to make the fee "grossly disproportionate" to the special services rendered. Warner Bros. Theatres, supra. Plaintiffs offered evidence to show that the amount of the fee charged for the license was greatly disproportionate to the cost of the inspections, considering the time and manner of the inspections. Two managers of plaintiffs' apartment complexes testified that the inspections lasted approximately 15 minutes to one hour. This was disputed by Mr. Harris, who testified that the inspections were much more substantial and lengthy than what plaintiffs allege. We are of the opinion that the truth of the matter probably falls somewhere in between the two versions. Nevertheless, even if we accept plaintiffs' testimony as accurate, we do not find it controlling when considered in the light of the other evidence concerning the cost and workload of the Department of Health relating to

the enforcement of Ordinance 2295, as previously mentioned.

Plaintiffs' proof only relates to the services rendered their apartment complexes. We do not infer from this testimony that all the inspections and services performed by the Department of Health in enforcing Ordinance 2295 throughout the township were similarly conducted.

Therefore, because we find that the services performed by Upper Darby Township pursuant to the enforcement of Ordinance 2295 are "special" rather than "general", and that the fee charged by the township is not "grossly disproportionate" to the services rendered, we will not invalidate the ordinance at issue here. Further, plaintiffs' claims for the return of the licensing fees paid to Upper Darby Township are denied.