## Fryer Appeal

*Wisler, Pearlstine, Talone & Gerber*, for appellants.

*Foulke, Knight & Porter*, for board of assessment and revision of taxes.

CORSON, J., March 8, 1951.—Mr. and Mrs. Fryer, appellants, are the owners of a certain property in Lower Providence Township, having a frontage on Valley Forge Road of 125 feet and a depth of 300 feet. This property was purchased by the Fryers in 1948 for a price of $1,250. It was assesssed immediately after its purchase at $500. After purchasing the property the Fryers sunk an artesian well at an expense of $300. The Fryers occupy a trailer on the property which is intended, more or less, for their permanent, or at least indefinite, occupancy.

Sometime during 1948 or 1949 the Fryers established a trailer camp. In December of 1949, when the local assessor assessed the property for 1950 tax purposes, there were 12 trailers, including that of the Fryers, upon the property. The Fryers have wired the property so that electric current is brought to each trailer. Water piping was installed so that each trailer has water brought in by hose or pipe connection. Ten septic tanks were installed so that, by tubing, ten trailers can each have their own sewage disposal facilities. For the use of these facilities the Fryers charged each trailer owner the sum of $3.50 per week as rent.

In 1950 there were approximately nine children living in the trailer camp of school or preschool age. The local assessor stated that he appraised the property for 1950 tax purposes at $6,200.

From the testimony the question of trailer camps has become a serious problem in the Township of Lower Providence. With eight trailer camps, and probably all of them with children of school age, there is a real burden placed upon the school authorities to provide educational facilities for these children with

no taxes upon the trailer homes. However, the trial judge feels that under the testimony in this case the trailers never became part of the real estate and remained personal property. Practically all of the trailers were licensed as vehicles and could be moved and legally towed over the highways on an hour's notice.

Admittedly, the local assessor for the board of assessment, in assessing the real estate, took into consideration the value of the trailers located on the real estate. In justifying this the board of assessment relies upon the case of Lower Merion Township v. Gallup, 158 Pa. Superior Ct. 572, 575 (1946), wherein the court stated, inter alia, "A house trailer is simply a mobile house. It is as much a dwelling as any house which is built on a foundation and therefore not mobile." However, the question being passed upon in the Gallup case was not whether a house trailer became part of the real estate, but whether a house trailer used as a dwelling under certain circumstances became subject to the building occupancy code of the township. Certainly nowhere does the Gallup case hold that a house trailer, whether considered as a dwelling or not, becomes part of the real estate. It is not necessarily the extent to which such personal property is attached to the real estate but the intention of the parties to make it part of the real estate that controls. Of course, the extent of such attachment may be considered in passing upon the question of intention: Hill v. Sewald, 53 Pa. 271 (1867).

While, in this case, the rental income of appellants' property, if there were full occupancy for an entire year, would be in the neighborhood of $2,000 per year, yet such rental value is not the only criterion to be used in assessing real estate, although it is one of the things to be considered: Matson Appeal, 152 Pa. Superior Ct. 424 (1943).

Appellants contend that their property must be assessed on the same basis as adjoining real estate not used as a trailer camp. With this contention, however, the trial judge cannot entirely agree. Appellants' property is no longer vacant ground but has been equipped to furnish water, electric light, and sewage facilities for at least 10 trailers, or, as they are called in the Gallup case "mobile houses". The court, in the Matson case, supra, took into consideration the fact that while the rental value of a parking lot may be high during one year, because of changing conditions, such lot may become of little value the next year for parking purposes. That would seem to be exactly the contention of appellants in the present case. Mr. Fryer, in his testimony, intimates that if the trailers that were on his property at the time the assessment was made continued to remain upon the property, he would be perfectly willing to pay an increased assessment. However, as he says, trailer dwellers are usually nomadic in their habits particularly as in this case when they are employed upon temporary neighborhood projects.

The trial judge feels, however, that in view of the improvements upon appellants' property, giving it at least a potentially rather high rental value, an increase in assessment above the ordinary unimproved adjoining properties is justified.

While the trial judge sympathizes with the problem of the township and school authorities in Lower Providence, where according to the testimony there are at present eight trailer camps, yet it may be that there is statutory authority under which taxes may be levied directly upon trailers or the occupancy of such. Certain it is, however, that they cannot be assessed as part of the real estate. See Petition of Harry B. Mason, 75 D. & C. 1.

While it is true that appellants did not have as many trailers upon their property during the entire year of 1950 as were there when the assessment was made, yet under all the evidence the property not only had a potential, but an actual rental value during 1950. We feel that substantial justice requires a reduction of the assessment. We therefore enter the following order:

And now, March 8, 1951, the appeal of appellants is sustained to the extent that the assessment of appellants' real estate, assessed at $6,200 for the year 1950, is reduced to $3,000.