## HARRISBURG ELEC. L. CO. v. B. & E. GOODMAN.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
OF DAUPHIN COUNTY.

Argued June 5, 1889—Affirmed at Bar.

1. Where the contract of an electric light company with a consumer does not expressly determine the ownership of the wires, etc., placed beneath the plastering in wiring the building, that ownership is a question of intention to be found by the jury under all the evidence.

2. In an action of replevin, where the defendant has given bond and retained the property, it is competent to instruct the jury that if they find for the plaintiff, he may recover not only the value of the property, but damages sustained by its detention.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, Mc-COLLUM and MITCHELL, JJ.

No. 29 May Term 1889, Sup. Ct.; court below, No. 214 January Term 1888, C. P.

On November 7, 1887, the Harrisburg Electric Light Company issued a writ of replevin against B. & E. Goodman, to recover certain electric light wires and appliances put by the plaintiff into a store-room leased and occupied by the defendants. The defendants gave bond, retained the property, and pleaded "non cepit and property."

At the trial on January 21, 1889, it was shown that on March 9, 1886, the defendants executed a written contract or authority to the plaintiff to place wires and applicances in their store-room, agreeing to use electric light to be supplied to them at a fixed price for one year, in conformity with the regulations indorsed, among which were the following:

" Worn out lamps replaced by company without cost to the consumer. Lamps accidentally broken to be replaced at the expense of the consumer.

" Pendants, brackets, shades, holders and molding for concealed work will be at cost of consumer."

\*    \*    \*    \*    \*    \*    \*    \*

" The Harrisburg Electric Light Company reseryes to itself

the right, at any time, to cut off the flow of electricity, if it shall deem it necessary to protect itself from fraud or abuse.

"In default of payment of bills within the time prescribed, the flow of electricity may be stopped until the bill is paid.

"The Harrisburg Electric Light Company shall have free access into the premises for the purpose of examining the wires and lamps, or for the removal of lamps or wires."

Wires from the street wires were run on the woodwork over the door-way and fastened by small staples and painted. After passing into the store-room the wires were imbedded and concealed in the plaster. To do this, the lath and plaster from the ceiling and the plaster from the brick side-walls of the store were cut away, so as to enable the workmen of the company to fasten the wires securely by staples to the joists of the ceiling and the brick walls of the sides. The lath and plaster were replaced, so that the wires were out of sight. The store-room was then papered and painted. The ends of these imbedded wires were allowed to stick out of the plaster at the place where electric lights were to be placed. To these ends electric wires were connected and then fastened to the gas chandeliers and fixtures, so that either electric light or gas light, or both, could be used. To light the windows of the store-room more effectively the electric light company fastened gas-pipe upright in the windows, through which electric wires ran, supplying electric light to reflectors fastened on the pipe.

About November 2, 1887, the defendants sent the following notice to plaintiff:

"We are about to take from another company the lighting of our store. We hereby notify you to remove your wires from the outside of our premises, so that we may connect with the wires that are within our store and premises. We claim control and to own all the wires that are attached to the building in which we have our store, and we wish your wires severed and cut up to the point at which they connect with the wires attached to our building. We desire to have our store lighted this evening and unless you cut and sever the wires indicated, by two o'clock P. M., we will cut the wires or have the same done at your expense."

The plaintiff at once removed the outside wires, but claimed the right to remove the wires placed under the plaster, as well

as other wires and appliances which were merely annexed to the building. The defendants resisted and the plaintiff then brought this suit.

At the close of the testimony the court, SIMONTON, P. J., charged the jury as follows :

You have already heard read the contract made between the plaintiff and defendants in this case for the supply and use of electric light for one year from the ninth day of March, 1886. In the body of that contract the defendants authorize and direct the Harrisburg Electric Light Company to place electric wires and fixtures in their premises at Fourth and Market streets, and agree to use a certain amount of light for one year. It is provided that they shall pay twenty-five dollars per month, between the first and tenth days of each month in conformity with the regulations indorsed thereon, and there are certain matters indorsed on the back of the paper called "rules and regulations of the Harrisburg Electric Light Company." Among those is the provision that pendants, brackets, shades, holders and molding for ceiling work shall be at the cost of the consumer, and also that the company shall have free access into the premises. There are also other provisions contained in the contract.

It seems, that after using this light for something more than a year, and paying for it also, the defendants concluded that they no longer desired to take the light from this company, and gave one or two different notices to that effect to the company. The plaintiff sent its workmen and took out certain of the wires and other matters that had been put in, when a dispute arose between them as to the right of the plaintiff to take out the other fixtures that they had put in; some gas pipe, which was set upright in the windows, and through which electric wires ran ; the reflectors upon this gas-pipe, and, also, some wires that had been put under the plastering and papering, and some, I believe, of the wires under the lathing. The controversy here is, as to those articles which were not removed, the plaintiff claiming that they belonged to it, and that it had the right to remove them, and the defendants claiming that they had not the right to remove them ; that they did not belong to the plaintiff, and that they are, as the defendants claim, attached

to the real estate, and had become a part of it, so that they must remain and go with the house.

\* \* \* \* \* \* \* \*

The question is, to whom did these articles belong? And that is to be determined partly from the contract of the parties; and where there is no contract, then upon the facts and general principles. The contract itself says nothing about the ownership. It authorizes the plaintiff to put electric wires and fixtures into the premises. The defendants paid nothing, either for putting them in or for the fixtures themselves. The rules and regulations to which they agreed to conform, provide that certain matters that might be put in or might not, shall be paid for by the defendants in this case, the persons who take the light. There is no evidence here that any such matters were paid for by them. We do not know that there is any definite evidence to show that any of the matters provided for in that clause were put in. Brackets, we think, were spoken of in the evidence, but whether they were of the kind referred to herein or not, we have no means of knowing. The company reserved the right to enter the premises for the purpose of examining the wires and lamps, or for the removal of the wires and lamps. That would imply that there were some of these fixtures that were to be removed by them, and they did remove some of them without dispute.

The contract, taken in connection with the rules and regulations, is not very definite upon the matter of ownership and the right to remove the articles. All that might have been provided for in the contract. It might have been expressly provided that the company should have the right to remove them all when the defendants ceased to take the light. The matter is left somewhat indefinite, while it is quite clearly implied that it is to have the right to remove the wires. In that state of the case, we must determine, as best we can, what the rights of the parties are, and, therefore, it is that we leave to you the matter of determining the ownership and the right as to these articles. We think you ought to look at it, and determine it, not as a whole, but separately, with respect to two different classes of articles at least.

You have heard from the testimony, of these gas-pipes set in the windows, upright pieces of gas-pipe some ten feet long, and

the T's and L's, which merely describe the shape of certain parts of it, and the reflectors and other matters of that kind. They were put in there to arrange the light in the windows; screwed to ceiling and the floor of the windows. It is manifest that those could be removed with very little trouble or disturbance or injury to the building, not any more than is common to the changing or arrangement of the window of a store room when one tenant goes out and another one comes in. There are always changes which would affect the property quite as much as the removal of these articles, and we think the jury ought to determine, at least separately, whether when the plaintiff put this property in there, and charged nothing for it, for they did not in any definite terms say that they belonged to the defendants, they did not put them in there simply for the purpose of furnishing the light, retaining the right to take them out again. If they belonged to them and they reserved the right to go into the building and take out what belonged to them, then they had the right to take them out when the contract was at an end, and it would seem nothing more than reasonable that the plaintiff should have the right to take out these matters which could be taken out without injury. If the jury believe that because they were set up in that way, they intended to give them to the defendants, and that the putting them in in that way shows that they intended to make a donation or gift to the defendants, in consideration of their taking the light, it is open for them to do so.

In the absence of any agreement on the subject, we must get at the rights of the parties, we must determine what their intention was, from their acts; but it might be going pretty far to say that because they put them in, they intended to give them to the defendants; and if they retained the ownership in them they have the right to take them out, because they have the right to go upon the premises and get what belongs to them. [That is, as to one class of articles, all of them, I think, except the wire. Some of this wire, and it is for you to remember what part it is, was imbedded in the plastering, or put in the lathing and plastering and under the paper. How was it as to that? You will infer from the evidence that the wire is not of very much value. One of the witnesses for the plaintiff, testified that all these articles were of the value of

ten dollars. Did the fact that the plaintiff put some of this wire under the lathing, and others in the plaster under the paper, imply that it intended to leave it there, or did it not? When the wires were put in in that way, did the defendants actually and reasonably understand from the action of the plaintiff, in putting them there, that they were to remain? That is a question the jury must determine, and if the fair, reasonable and natural conclusion, from the way in which they were put in, was that they were not to be torn out again, then the jury can find that they were to remain, and if the jury does so find as to those, the verdict should be in favor of the defendants. It is a question of intention. If the plaintiff intended that they should remain; if the defendants also so intended, and if the defendants had the right to understand, from the way in which they were put in, that they were to remain, it is fair that they should remain. On the other hand, if the way in which they were put in does not imply that they were to remain; if they still continue the property of the plaintiff with the right to take them out, then they still have that right.] [1] In any event, as the case now stands, they would not come out. The defendants would simply pay for them.

[Those are the questions for you to determine from the evidence, as to these two different classes of property. If you find that they all belonged to the plaintiff, then you determine the value of them. You determine what the defendants shall pay for them, and in addition, if you think that there ought to be anything allowed for the detention of this property, for the refusal to allow the plaintiff to take it, or if the plaintiff has suffered damages on that account,' you can add the amount of the damages for retaining it. If you think that part belonged to the plaintiff, and not all, you find the value of those that do belong to the plaintiff, with damages, if any, in the same form. If you find that they all belong to defendants, your verdict should be for the defendants generally. If you find that they belong to the plaintiff, your verdict is for the plaintiff, fixing the value and the amount of damages, if any, for their detention. If you find that part belonged to the plaintiff, you find for the value of that part, with damages, if any for retaining it. And as you find so will be your verdict.] [4]

The defendants have submitted this point:

The court is requested to charge the jury that the wire mentioned in the writ became, according to the testimony in this cause, realty, and was so at the time of the service of this writ; and that the intention of the parties to this action, at the time of placing the wires or afterwards, however expressed, cannot change the wire from realty to personalty, and the verdict as to the wire mentioned in the writ must be for the defendants.

Answer: This is refused.[2]

The jury returned a verdict in favor of the plaintiff for $50. A motion for a new trial having been argued, the court, SIMONTON, P. J., on February 22, 1889, filed the following opinion:

The case of Seeger v. Pettit, 77 Pa. 437, and the cases therein cited, show that the test of conversion of fixtures into realty is no longer, as it formerly was, physical annexation. After citing several of the more recent cases, the court say: "The true rule to be deduced from these authorities is, that it is not the character of the physical connection with the realty which constitutes the criterion of annexation, but it is the intention to annex." It is also said in this case that the question of intention to annex, is a question of fact to be determined by the jury. The case now before us was given in charge to the jury upon this principle, and we think there was no error in so doing.

A new trial is also asked for the reason that the jury were instructed that they could find, in addition to the value of the property claimed, damages for the detention. This seems to be the law where the defendant has given bond and retained the property. Thus in Etter v. Edwards, 4 W. 63, the court say: "When the goods have not been delivered to the plaintiff, there he recovers as well their value in damages, as damages for their detention." And in Chaffee v. Sangston, 10 W. 265, it is said: "It seems to be the settled law, that the judgment in replevin, when rendered for the plaintiff, can only be for damages and costs."

We, therefore, think that the jury were properly instructed, and, although the amount of their verdict is perhaps large, in view of the testimony as to the value of the property, it is not

so great as to require the court to interfere with the verdict for that reason.

The motion for a new trial is, therefore, overruled, and judgment directed to be entered on the verdict on payment of the jury fee.

Judgment having been entered on the verdict, the defendants took this appeal, assigning for error:

1. The portion of the charge included in [ ] [1]
2. The answer to defendants' point. [2]
4. The portion of the charge included in [ ] [4]

*Mr. Wallace Dewitt* (with him *Mr. Robert Snodgrass*), for the appellants.

Counsel cited: Voorhis v. Freeman, 2 W. & S. 116; Ewell on Fixtures, 1–6, 21, 73, 299; Pyle v. Pennock, 2 W. & S. 391; Piper v. Martin, 8 Pa. 211; Mitchell v. Freedley, 10 Pa. 199; White's App., 10 Pa. 253; Harlan v. Harlan, 20 Pa. 303; Shell v. Haywood, 16 Pa. 530; Hill v. Sewald, 53 Pa. 274; Wall v. Hinds, 4 Gray 256; Talbot v. Whipple, 14 Allen 177.

*Mr. John H. Weiss* and *Mr. Lyman D. Gilbert*, for the appellee.

Counsel cited: Hill v. Sewald, 53 Pa. 274; Coleman v. Lewis, 27 Pa. 291; Seeger v. Pettit, 77 Pa. 441.

Per Curiam:
On the argument at Bar,

Judgment affirmed.

---

# CITY OF HARRISBURG v. JAMES McCORMICK.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF DAUPHIN COUNTY.

Argued June 3, 1889—Decided June 28, 1889.

Where a municipal claim is filed for the cost of street improvements in the built up portions of cities, assessed upon abutting property under