Lower Merion Township v. Gallup, Appellant.

Argued December 11, 1945. Before BALDRIGE, P. J., RHODES, HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Meyer L. Casman,* with him *Elmer L. Menges,* for appellant.

*John E. Forsythe,* Acting Township Solicitor, with him *Franklin L. Wright* and *James M. Brittain,* Township Solicitor, for appellee.

OPINION BY ARNOLD, J., March 5, 1946:

This case involves the validity of a building code ordinance, as it is applied to house trailers.

This Court held in *Township of Lower Merion v. Harrison,* 84 Pa. Superior Ct. 574, that the then legislation [1] did not confer the power to classify buildings according to use and occupancy in a building code, but only to make regulations irrespective of use. Such power was supplied by the Township Code of 1931, P. L. 1206, 53 P.S. 19092-201 et seq. [2] "This control by the building laws

---

[1] Act of 1917 P. L. 1115 as amended by Act of 1919 P. L. 424.

[2] "The corporate power . . . shall be vested in the board of township commissioners. The board shall have power . . .

"XVIII. To make regulations for the construction of new buildings and the alteration and repair of old ones, and to require that before the work begins municipal approval of the plans and specifications therefor be secured; *to classify buildings or parts of buildings*

and the municipal regulations founded thereon, is basically the same as that imposed by the zoning ordinances . . .": *Commonwealth ex rel. Shooster v. Devlin*, 305 Pa. 440, 445, 158 A. 161.

In 1931 appellee enacted a building code fixing certain minimum requirements relating to light, air, sanitation and safety of buildings thereafter erected. The buildings were classified according to use, among them dwellings. Penalties were provided for those who built, used or permitted to be used any non-conforming buildings, including dwellings.

The validity of the *original* Building Code of 1931 is not challenged by the appellant as being invalid or unreasonable in any particular. It is a clear violation of this ordinance to build and use as a dwelling a nonconforming house such as, for instance, the familiar tourist camp cabin. It is no less a violation where the cabin is built without, and then moved into, the township and occupied as a dwelling.

In 1940 the township amended its building code by adding section 200, reading: *"House trailer* means any vehicle for living or sleeping purposes. If a house trailer is used for living or sleeping purposes within the Township for an aggregate of more than thirty days in any period of one year, it shall be considered as a singlefamily dwelling for all purposes of this ordinance."

Admittedly defendant, subsequent to 1940, permitted house trailers to be placed on his ground and to be used and occupied as dwellings, and the identical trailers have remained there and been used as dwellings for several years without interruption. Admittedly they do not conform to the requirements of the building code in a great number of respects, including sanitation and windows. This subjected him to the penalty imposed and from which he appealed.

*according to the use to be made of them;* to specify the mode of construction of such different classes of buildings . . ." (Italics supplied).

A house trailer is simply a mobile house. It is as much a dwelling as any house which is built on a foundation and therefore not mobile. Indeed these house trailers were not resting on wheels but were "up on boxes, or some jacks of some sort." Some "from the floor of the trailer to the ground [were] covered around . . . with what appeared . . . to be a shingle, or composition . . . for breaking the wind." Sidewalks leading to each were constructed. Each was connected with water and electric lines. Communal lavatory and laundry facilities were provided by the defendant.

To say that these were not dwelling houses is an attempt to fictionalize a reality. They were used and intended to be used as homes, and were as much dwellings as any similarly sized structures could be. In fact they contained household conveniences rarely present in houses so small. They differed from the ordinary house only in respect *to the ease* with which they could be moved. They were very similar to the tourist cabins so frequently found along our highways.

The building code is not an attempt to regulate or prohibit a trailer camp, which the appellant contends can only be done under a zoning ordinance. This clearly appears from the clause that the trailer is not to be considered a dwelling until it has remained 30 days. This is a fair standard by which to determine whether the use is temporary and transient, and therefore legal, or settled and fixed, and therefore illegal. If the local government cannot fix a thirty day limit it can as well be argued that no limit can be fixed, which in turn means that permanency cannot be avoided.

In Indiana a thirty day limitation was sustained: *Spitler v. Town of Munster et al.,* 14 N.E. 2d 579 (1938) ; in Ohio a sixty day limitation: *Renker v. Village of Brooklyn,* 40 N.E. 2d 925 (1942) ; and in Michigan a ninety day limitation: *Cady v. City of Detroit,* 286 N.W. 805 (1939). In each of these cases the power was conferred on the local government. In the cases striking down such provisions such power was not conferred or

was in conflict with another statute, as in the later Michigan case of *Richards v. City of Pontiac*, 9 N.W. 2d 885 (1943).[3] The case at bar is one of first impression in Pennsylvania, but is controlled by the principle of local self government having the right to exercise all powers conferred.

It is argued that a current house shortage ought to make this restriction void. That might be an argument why the local authorities ought not to enforce the ordinance, but certainly cannot render this judgment invalid. With neither the wisdom of the ordinance nor the rationality of its enforcement have we anything to do. These have been confided by our Constitution, not to the courts, but to the other two coordinate branches of the government. In *Commonwealth v. Schaffer*, 98 Pa. Superior Ct. 265, Judge BALDRIGE (now President Judge) stated at page 269: "It is our duty, instead of defeating the purpose of an ordinance and vitiating it, to resolve any doubt in regard to its construction in favor of its validity."

Judgment affirmed.

---

[3] See "Automobile, Motor and Tourist Camps" by Charles S. Rhyne, Executive Director of the National Institute of Municipal Law Officers, Report No. 75—Legal and Administrative Problems of Municipal Regulations—for an able discussion of the various problems and respective rights. See also 115 A.L.R. 1400.