Streyle *v.* Board of Property Assessment, Appeals and Review, Appellant.

Argued April 14, 1953.   Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, GUNTHER and WRIGHT, JJ.

*Leonard Boreman,* Special Counsel, with him *Nathaniel K. Beck,* County Solicitor and *John G. Brosky,* Assistant County Solicitor, for appellant.

*Samuel Avins,* with him *Leonard M. Mendelson,* for appellee.

OPINION BY HIRT, J., July 14, 1953:

For the triennium beginning with January 1, 1950, plaintiff's land, consisting in 1/6 of an acre in the City of Pittsburgh, had been assessed by the County of Allegheny for tax purposes at $1,200. An inter-triennial change was made by adding $2,200 to the original assessed valuation of the land for a new building subsequently erected. Plaintiff conceded the validity of the assessment to this extent; her objection was directed to the further addition of $24,900 being the total value of 21 automobile trailers found on the premises at the time of the reassessment. The Board of Property Assessment, Appeals and Review, refused to modify the assessment so increased. But on appeal to the lower court the value of the 21 trailers was eliminated and the total assessed value of the land was reduced by $24,900 to a total of $3,400. In this appeal from that order the county contends that the trailers found on plaintiff's land were properly assessed as real estate in the name of plaintiff under the General County Assessment Law of May 22, 1933, P. L. 853, 72 PS §5020.

At the outset, the elimination of irrelevant considerations may be helpful in the approach to the relatively narrow issue in this case. It of course is no objection to the validity of the assessment that title to the trailers involved was not in plaintiff, the owner of the land. *Pennsylvania Co., Trustee v. Bergson,* 307 Pa. 44, 159 A. 32. But contrary to appellant's contention the "Assembled industrial plant doctrine" has no application here. The equipment necessary to the operation of an *industrial plant* is real estate and taxable as such within the meaning of §201 of the 1933 Act, supra, as amend-

ed, (a rescript of §32 of the Act of April 29, 1844, P. L. 486, at 497) 72 PS §5020-201. The above doctrine, in its application to taxation of real estate under the statute, is specifically restricted to such establishments as are industrial plants and cannot be invoked even where the business involved is within a classification "sometimes generally called 'industries' ": *N. S. Laundry Co. v. Bd. of Prop. Ass't.*, 366 Pa. 636, 79 A. 2d 419. In the light of the declared intention of our Supreme Court, in the above and other cases, to further restrict the doctrine rather than to expand the field of its application, it cannot be said that the business conducted by plaintiff on her land and the use of it as a "trailer park" transforms it into an industrial plant justifying the assessment of the house trailers as realty.

Our holding in *Lower Merion Twp. v. Gallup*, 158 Pa. Superior Ct. 572, 46 A. 2d 35 is not of decisive importance in the present appeal. In that case this court speaking through Judge, now Mr. Justice ARNOLD, said: "A house trailer is simply a mobile house. It is as much a dwelling as any house which is built on a foundation and therefore not mobile . . . To say that these were not dwelling houses is an attempt to fictionalize a reality. They were used and intended to be used as homes, and were as much dwellings as any similarly sized structures could be". That case involved the validity of a building code under a township ordinance enacted in the exercise of the police power. The ordinance by its terms denominated a house trailer "used for living or sleeping purposes within the Township for . . . more than thirty days" . . . "a single family dwelling for all purposes of this ordinance". And the purposes of the ordinance were to enforce minimum requirements as to light, air, sanitation and safety. A house trailer may be a home or "mobile house" subject to regulation under the police power without becoming real estate

and subject to taxation as such. The present issues were not raised in the *Gallup* case.

Appellant is not supported by the statute law or by city ordinance. The Vehicle Code of May 1, 1929, P. L. 905, 75 PS §2, as amended, defines a *vehicle* and classifies a *trailer* as a "vehicle without motive power, designed to carry property or passengers or designed and used exclusively for living quarters wholly on its own structure, and to be drawn by a motor vehicle or tractor . . ." House trailers so long as they remain mobile, i.e., equipped with wheels, are personal property in contemplation of The Vehicle Code. Moreover the City of Pittsburgh, by ordinance, similarly defined a trailer as "a vehicle of portable structure equipped and used for sleeping or living quarters mounted upon wheels . . ." And the ordinance in effect made it unlawful for one to convert a trailer into real estate by removing the wheels or otherwise fixing "the trailer permanently to the ground so as to prevent its removal".

Trailer folk for the most part are nomads at heart and the question whether the vehicles were assessable as real estate in the present case depends upon the intention of the parties in that regard. Cf. *Clayton v. Lienhard*, 312 Pa. 433, 167 A. 321. Under license from the City of Pittsburgh, plaintiff's land on January 1, 1950, was operated as a Trailer Park. Plaintiff did not own any of the 21 trailers but rented space to each of the owners under written leases for indefinite periods, on a daily, weekly or monthly basis for occupancy by them for dwelling purposes. Various public utilities were supplied to the trailers from a central building. All of the trailers were equipped with wheels and none of them rested on foundations of any kind. Some trailers remained on the premises only overnight; the average stay was about six months. They remained unattached to the real estate by their own-

ers, not for the purpose of avoiding the penalty of the city ordinance, but to maintain their mobility as trailers. On location the vehicles were stabilized by means of blocks or jacks integral with their construction. But any of them could be readied for travel off the premises within a few minutes. The intention of the owners to use the park as transient tenants merely, is indicated also by the fact that all of the trailers involved in this appeal were titled as motor vehicles under §201 of The Vehicle Code, 75 PS §31 or similar laws of other states and most of them bore current motor vehicle license plates. The majority of the owners also had their automobiles on the lot—the motive power for the moving of the trailers over highways to the next stopping place. At the time of the reassessment one of the trailers had been in the park but 18 days and none of them had been there for more than four months. On the date of the hearing in the lower court there were five of the original 21 trailers still on the land. These were occupied by students who were attending the University of Pittsburgh. They however intended to move off the premises, as all of the others had done, upon completing their college work.

This is a case of first impression in our appellate courts. However, in *Mason Appeal,* 75 D. & C. 1, Judge SOHN, under similar circumstances in a well considered opinion, concluded that house trailers located on the land of another and not permanently affixed thereto are not taxable as real estate. So also, in *Stewart v. Carrington,* 119 N. Y. S. 2d 778, a case recently decided under New York State statutes, similar to those involved in the present case, it was held that trailers, which were kept at a trailer park where roads had been built, and water and sewer systems had been installed, and electric and telephone connections had been provided for use by the occupants of trailers, were not

"realty" and were not taxable as such, so long as they remained mobile units and were not converted into real property by removal of wheels and mounting on permanent foundations.

Certainly owners of house trailers in trailer parks of a community receive police and fire protection and other benefits without payment of any part of their cost. It may be conceded that they are receiving services from municipalities for which they should be taxed. The imposition of a license fee will not solve the problem, for the county, under the guise of a police regulation, cannot impose a revenue tax. *Warner Bros. Theatres v. Pottstown Boro.*, 164 Pa. Superior Ct. 91, 63 A. 2d 101. Specified classes of municipalities are vested with authority, by the Act of June 25, 1947, P. L. 1145, as amended, 53 PS §2015.1, to assess and collect a tax on the use or occupancy of house trailers. The legislature in its discretion well might delegate similar authority to counties of the Second Class.

Order affirmed.