## Wolfe Tax Appeal

*Miller, Kistler and Lee,* for appellants.
*Love and Wilkinson,* for appellee.

CAMPBELL, P. J., October 31, 1966. — With the rapidly changing science of agriculture, a structure known as a "Harvestore" has appeared. The "Harvestore" serves the same general purpose as a farm silo, and the trend toward automation suggests that it might some day replace its counterpart. The Board of Assessment and Revision of Taxes of Centre County assessed as real estate a Harvestore located on the farm of appellants for the year 1965. Appellants appealed, and all procedural requirements with respect

to the appeal have been complied with. The sole question before the court is whether or not the Harvestore is subject to real estate taxation. The amount of the assessment is not in dispute. Before discussing the pertinent legal aspects, we believe a detailed description of the Harvestore is necessary.

## DESCRIPTION

The Harvestore here involved is a cylindrically shaped structure, 20 feet in diameter and 60 feet in height. The component parts were purchased by and shipped to purchaser as a package unit for construction on the premises. The sidewalls consist of glass covered steel sections 5 'x 9' in size, which are bolted together and then carefully sealed to prevent leakage of air. The structure is placed on a circular concrete footer generally extending 3 feet or more below ground level. The footer is approximately 31 inches wide and is filled with poured concrete into which 14 anchor bolts are inserted. A foundation ring is attached to the anchor bolts on the footer and then filled with poured concrete to a depth of approximately 38 inches, requiring approximately 20 cubic yards. The top of the foundation ring, which serves as the floor of the structure, is covered with a layer of $3\frac{1}{16}''$ steel, welded in place and attached to the anchor bolts. Around the outer edge is an angle iron to which can be bolted the next section of the upright portion. On the floor is placed a trough or pan into which a chain-driven unloader may be inserted for the purpose of extracting the silage. Rings of the glass-coated steel, five feet in height, are bolted together and jacked up from the bottom in successive sections until the desired height or capacity is reached. When all sidewall sections are raised to the required height and bolted together, they are carefully sealed to prevent leakage of air. The structure is capped with a roof which con-

tains a small hole for the purpose of inserting shredded farm crops. It has a capacity of approximately 250 tons, although the tonnage depends upon the moisture content of the material being harvested. After fermentation, the silage is removed from the structure by a mechanized unloader at the bottom thereof, and the silage is conveyed by a conveyor under roof into the feeding barn. The package to construct the Harvestore costs in the neighborhood of $12,000-$20,000 and, in addition thereto, the purchaser has to pay the construction costs of the footer and foundation. It is claimed that this structure permits a continuous operation whereby crops such as corn, hay, sorghum, etc. may be shredded and inserted in the top and at the same time allow continuous feeding from the bottom without having to wait the customary two weeks for the normal fermentation to occur. This assumes, of course, that you do not extract the same material from the bottom that was inserted at the top within a two week period.

The Harvestore is not attached to any other farm buildings, although an enclosed roof covered area extends from the side of the Harvestore to the feeding barn to protect the conveyor in removing the silage during bad weather conditions.

It is contended that the structure can be dismantled, removed and re-erected in a new location at a cost of approximately $1,400. This would entail removing and replacing about 5,000 bolts and the loss of the footer, the foundation, the anchor bolts, the angle iron, and portions of the unloader. A jackhammer would be required to remove some items from the concrete foundation.

The Harvestore in question was sold under a lease agreement with Commercial Credit Corporation. The lease required 14 semiannual payments and contains the customary provisions that at all times the Har-

vestore shall for all purposes be considered personal property and shall be returned to lessor at the expiration of the term thereof unless the user has taken the requisite steps to become the outright owner.

Appellant taxpayers contend that the Harvestore is not a storage silo, but a continuous food processing plant producing a unique and superior livestock feed. They further contend that it is movable equipment, under lease, and not permanently affixed to the real estate.

## DISCUSSION

The power to determine what property shall be subject to taxation is a legislative function. The authority to assess and tax in this, a sixth class county, is governed by The Fourth to Eighth Class County Assessment Law of May 21, 1943, P. L. 571, as amended, 72 PS §5453.101 et seq. Section 201 of the act provides, inter alia, as follows:

"The following subjects and property shall as hereinafter provided be valued and assessed and subject to taxation for all county, borough, town, township, school, (except in cities), poor and county institution district purposes, at the annual rate, . . .

"(a) All real estate, to-wit: Houses, house trailers and mobilehomes permanently attached to land or connected with water, gas, electric or sewage facilities, buildings, lands, lots of ground and ground rents, trailer parks and parking lots, mills and manufactories of all kinds, and all other real estate not exempt by law from taxation. Machinery, tools, appliances, and other equipment contained in any mill, mine, manufactory or industrial establishment shall not be considered or included as a part of the real estate in determining the value of such mill, mine, manufactory or industrial establishment: . . ."

The answer to our problem involves the interpretation of the aforesaid legislative enactment.

In construing a statute or an ordinance, words and phrases are to be construed according to their common or approved usage unless the statute or ordinance defines them otherwise: Statutory Construction Act of May 28, 1937, P. L. 1019, as amended, sec. 33, 46 PS §533.

Tax statutes and ordinances must be strictly construed in favor of the taxpayer and most strongly against the taxing authority: Quaid v. Philadelphia Tax Review Board, 188 Pa. Superior Ct. 623.

We find no legal precedents determing the taxability of a Harvestore, and we believe this case to be one of first impression in Pennsylvania.

The statute clearly indicates that all real estate not exempt by law is subect to taxation. If the Harvestore, after construction, is real estate, appellant must lose and the structure is taxable, since there is no applicable specific statutory exemption.

We hold that the Harvestore is subject to taxation on either of two theories: first, because we believe it is inherently real estate and secondly, even though it is held in some stage to be a chattel, it is so annexed to the property that it cannot be removed without material injury to the real estate and to the chattel itself. This approach may be thought to indicate an element of uncertainty, but we submit that technical advances such as prefabrication have advanced to the degree that it has become more and more difficult to distinguish between some chattels which remain such after attachment and those chattels which after attachment are ultimately construed to be real estate. This is especially true with respect to the ease of movability of a structure from one location to another, and the extent to which damages and loss have been minimized in doing so.

Some structures are inherently real estate, as, for example, a house or a barn. Generally, buildings have

been considered as such. At the turn of the last century, our Superior Court was called upon to determine the taxability of a stationary, though movable, sawmill: Bemis v. Shipe, 26 Pa. Superior Ct. 42 (1904). The mill was owned by a lessee of the land who had the right to remove, as has been customary with sawmills for generations past. The court there held that the sawmill was taxable real estate. This case was cited with approval by the same court in the recent case of Penn-Lehigh Corp. Appeal, 191 Pa. Superior Ct. 649 (1960). It was therein reiterated that as between an owner of land and an owner of a building, the structure may be treated as personal property, but it by no means follows that in contemplation of law for other purposes it is not real estate. The court continued:

"There is no doubt and there never has been any, that buildings are real estate and are, therefore, taxable as such".

In our opinion, the Harvestore qualifies as a building.

In legal circles, the antonym of real property or estate is personal property or estate. A chattel is defined as "an article of personal property; any species of property not amounting to a freehold or fee in land": Black, Law Dictionary (3rd ed.). This has been cited with approval in the case of Commonwealth v. Rosicci, 199 Pa. Superior Ct. 609 (1962). When we consider giving appellant the benefit of every doubt, as we are required to do, we find it impossible to classify the Harvestore after construction as a chattel or an item of personal property. In view of its massive size, the firm and permanent manner in which it is erected on a most substantial foundation, its purpose and function, the expense and size of the task and difficulty of removing same, and that it is not included as a fixture in another building, we are inclined to hold that it falls within the generally accepted classi-

fication of real estate and, under the above recited statute, taxable as such.

Appellant vigorously advocates that the Harvestore is a chattel. They further contend, and we agree, that the old common law doctrine of chattels becoming real estate by reason of permanent attachment thereto is no longer the law and that while certain chattels are taxable as real estate, others are not. The standards to be applied were laid down some years ago in the case of Clayton v. Lienhard, 312 Pa. 433 (1933), wherein it was stated as follows:

"Chattels used in connection with real estate are of three classes: First, those which are manifestly furniture, as distinguished from improvements, and not peculiarly fitted to the property with which they are used; these always remain personalty: [citing] . . . Second, those which are so annexed to the property that they cannot be removed without material injury to the real estate or to themselves; these are realty, even in the face of an expressed intention that they should be considered personalty—to them the ancient maxim 'Quicquid plantatur solo, solo cedit' applies in full force: [citing] . . . Third, those which, although physically connected with the real estate, are so affixed as to be removable without destroying or materially injuring the chattels themselves, or the property to which they are annexed; these become part of the realty or remain personalty, depending upon the intention of the parties at the time of the annexation; in this class fall such chattels as boilers and machinery affixed for the use of an owner or tenant but readily removable: [citing]. . . ."

Obviously, the Harvestore does not fall within the first mentioned category. Appellant argues that it comes within the third category. It would be repetitious to recount in detail the mammoth task involved in removing this structure. Suffice it to say it would

have to be taken down and dismantled piece by piece. The glass-coated steel sections could be salvaged, as well as a number of other component parts. If the crew is careful, a ten percent loss in parts could be expected. Approximately 5,000 bolts would have to be replaced. All of the anchor bolts would be lost, as well as the steel angle iron in the foundation ring, unless considerable work was done with a jackhammer to remove it from the concrete foundation. The complete foundation would be lost and would have to be replaced and, upon reconstruction, the structure would have to be completely resealed. The conveyor shelter between the Harvestore and the barn would be lost.

It is contended that no damage would be done to the real estate, assuming that you would cover up the foundation with earth, but in reality the abandoned foundation, consisting of many tons of concrete, is left therein, which may be injurious depending upon the use to which the land is thereafter put. A large hole in the foundation wall of the barn would represent substantial damage. Loss of use is also an element to be considered: Holland Furnace Co. v. Suzik, 118 Pa. Superior Ct. 405 (1935). As a dairy farm, the loss of the Harvestore would seriously curtail the farm's usefulness for that purpose.

Another element of the third classification is the intention of the parties as to whether or not the chattel is to remain personalty or become part of the real estate. Appellant points to the contract of purchase which specifically indicates that as between the parties, the Harvestore shall remain personal property. We believe this provision to be effective and binding upon the parties only for a limited time and for the specific purpose of protecting the parties until the purchase price of the Harvestore is paid. Generally, in the community, no practice has been established whereby the structures are sold and removed to other

locations. Those occasions where the Harvestore is moved is where a real estate development has taken over a farm and the farm has been converted entirely to a non-farm use. We believe it to be only in the most unusual circumstances when a farm would be sold and the Harvestore reserved, taken down, removed and erected at another location. We would therefore believe that the true intention of the parties, as determined from the surrounding circumstances, is that the Harvestore shall remain permanently as a part of the farm real estate.

We are inclined to hoist the red flag and refuse to extend the language contained in Penn-Lehigh Corp. Appeal to the effect that: "The [bowling] alleys became personalty because the parties, when they were installed, clearly expressed in the financing agreement the intention that they were to be personalty. . . ." As between the two parties, their intention would no doubt be given effect, but to say in every case that owner could by agreement keep property out of the reach of taxing bodies is subscribing to a very tenuous principle. It should be recognized that such language in a financing agreement serves a limited purpose of protecting the balance due on the vendor's sales price. When he is paid, he could not care less whether the property would then be considered real or personal. At best, it is one of the elements to be considered, but not controlling.

The last element in the third classification suggests that it applies to such chattels as boilers and machinery affixed for the use of an owner or tenant, but readily removable. Certainly the Harvestore would not fall within this description.

The question of whether a chattel is readily removable or whether it can be removed with or without material injury to itself or real estate is admittedly one of degree. As has been aptly stated:

"Any structure annexed to land can be reconverted into personal property if sufficient money is available for that purpose, but that does not make the structure personalty. Land used for a structure also can be re-created into its original state but it does not follow that some injury will not be done to the ground in removing a structure": The Neville Co. v. Board of Property Assessment, 100 Pitts. L. J. 151.

We truly believe that the Harvestore falls within the second category where chattels become real estate and are taxable as such.

INDUSTRIAL PLANT DOCTRINE

Pennsylvania at one time recognized the assembled industrial plant doctrine in real estate taxation. In 1953, by the Act of July 17, 1953, P. L. 455, 72 PS §5453.201, the legislature added the following language to the taxation statute:

"Machinery, tools, appliances and other equipment contained in any mill, mine, manufactory or industrial establishment shall not be considered or included as part of the real estate in determining the value of such mill, mine, manufactory or industrial establishment".

Appellant contends that the Harvestore is exempted from taxes under the above recited language. To succeed, they contend that the words "mill, mine, manufactory or industrial establishment" includes farming and agriculture. With this premise we cannot agree. The Statutory Construction Act requires us to apply the common or approved usage to the words contained in the statute. The assembled industrial plant doctrine is specifically restricted to such establishments as are industrial plants: Streyle v. Board of Property Assessment, Appeals and Review, 173 Pa. Superior Ct. 324.

A bowling alley could not be considered to be an industrial plant: Penn-Lehigh Corp. Appeal, supra.

The Supreme Court, in a comprehensive discussion of this problem in Jones and Laughlin Tax Assessment Case, 405 Pa. 421, specifically with respect to the intention of the legislature, concludes with this statement:

"Therefore, it is self-evident from a study of the history of tax legislation in Pennsylvania that the 'object to be obtained' by the 1953 amendments was to provide tax relief for Pennsylvania industries by removing all integrated 'machinery, tools, appliances and other equipment' from the real estate tax".

We, therefore, feel bound to hold that this language means what it says in that it applies only to mill, mine, manufactory or industrial establishments. Having so held, we deem it unnecessary to further discuss the use test commonly used to determine taxability of machinery, tools, appliances and other equipment which are contained in any mill, mine, manufactory or industrial establishment.

Although not required in the decision of this case, we fail to understand how this structure can be classified as a manufacturing, processing or production machine. It is a known fact that when certain crops are shredded and kept in oxygen-free storage, a chemical fermentation takes place. The resultant product is then a more desirable and palatable animal feed. This was originally done by a bunker or trough in the ground covered by material to make it airtight. Later on, it was done in an upright structure made of wooden staves called a silo. Still later, the silo was built of cement blocks, tile blocks, concrete staves, and any number of construction materials. Finally, the Harvestore appeared. Why this evolution? We submit that it was to accomplish a more convenient storage facility during and after the fermentation process. Even under the industrial plant doctrine exclusion, a structure used for storage is part of the real

estate and subject to real estate taxation: Jones and Laughlin Tax Assessment Case, supra. Certainly the storage aspect is not minimal or purely incidental but, on the contrary, the major function: United States Steel Corporation v. Board of Assessment and Revision of Taxes, 422 Pa. 463.

Appellant argues that when the process of fermentation is taking place, it makes the structure an integral part of a production process. Our answer is twofold. The fermentation process takes two weeks, and the ensilage may be held in the Harvestore for the major portion of a year or gradually used until the next crop appears. It is likewise true that appellant is not manufacturing or selling ensilage. He is storing or holding feed for his farm animals. The sales brochures advertising the sale of the Harvestore constantly refer to the storage aspect of the structure. Hay can be dried or cured in a stack in the field, but if a farmer chooses to build a barn to contain it for more convenient storage, the structure is taxable.

We are dealing here with a separate structure, not with a pipe organ or a bowling alley or a walk-in cooler or a furnace contained in another building. In those cases, the ease or difficulty of removal with or without material injury to itself or the real estate is a more appropriate and understandable test. Here, we believe the structure to be such that it compares favorably with any other building which obviously can be moved with the proper expenditure of time, know-how, and financial resources.

It is finally contended by appellant that the Internal Revenue Service treats the Harvestore as a chattel and permits an investment credit. Certainly what the Internal Revenue Service chooses to do in this instance would not be controlling upon us here. As much as we would like to favor those involved in agricultural pursuits, we must interpret this act pursuant

to the legal principles involved and avoid the economic aspects of the controversy.

DECREE

And now, to wit, October 31, 1966, the appeal of Harold O. Wolfe and Harriet Wolfe is dismissed, and the action of the Centre County Board of Assessment and Revision of Taxes is affirmed. By reason of the fact that the instant case was a test case and the County of Centre was desirous of securing a legal determination thereof, costs are assessed against the County of Centre. An exception is noted and bill sealed for appellants.