419 A.2d 660

**Lawrence G. HOROWITZ, t/a Lafayette Building Associates, Appellant,**

v.

**AMERICAN CASUALTY COMPANY OF READING, Pennsylvania.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1979.

Filed April 3, 1980.

Kenneth S. Siegel, Harrisburg, for appellant.

David J. Griffith, Philadelphia, for appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

SPAETH, Judge:

This is an appeal from an order of the lower court granting summary judgment to the insurer, American Casualty Company, in an action in assumpsit initiated by the insured, Lafayette Building Associates. At issue is the extent of coverage for rental losses and expenses incurred to prevent such losses.

Lafayette owns an office building in Philadelphia. The building was insured for $5,500,000, under a policy issued by American Casualty effective as of May 8, 1972. On May 28, 1973, an electrical transformer in the building was damaged. To prevent the interruption of electrical power to its tenants, Lafayette spent $29,491.25 to acquire and install temporary and permanent transformers. When American Casualty refused to pay Lafayette more than $9,608, Lafayette brought the present action for the $29,491.25. Partial judgment was granted Lafayette to the extent of $9,608, and both sides moved for summary judgment as to the remainder. The lower court denied the motions but on reconsideration granted summary judgment for American Casualty, holding that the policy did not provide coverage for more than the $9,608.

Summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.Civ.P., No. 1035. Summary judgment should not be granted unless the issue is clear and free from doubt. *Just v. Sons of Italy Hall*, 240 Pa.Super. 416, 368 A.2d 308 (1976); *Toth v. Philadelphia*, 213 Pa.Super. 282, 247 A.2d 629 (1968), *citing, Mallesky v. Stevens*, 427 Pa. 352, 235 A.2d 154 (1967).

■ The policy in this case really seems to be not so much a single policy as a collection of five separate policies and an endorsement, joined together as one policy. The cover page of the policy lists the separate parts of the policy, including "Part I Damage to Property–Building–Contents," "Part II Business Income," and "Part VIII Boiler and Machinery."

It is undisputed that damage to the transformer is covered by Part VIII, which covers accidents to machinery including transformers, and that the $9,608 covers the damages for losses provided by that Part.

Part II provides coverage for business interruption losses and expenses. That Part provides in pertinent part:

This Company agrees to pay:

1.  Loss of Rents resulting from necessary untenantability caused by destruction or damage by perils insured against in Part I occurring during the term of this policy to the building(s) described whether rented at time or not.

2.  Loss of earnings sustained, less operating expenses which do not necessarily continue, during necessary interruption of business caused by loss of damage to building or contents by perils insured against in Part I of this policy. Earnings are defined as net profit plus payroll expenses, taxes, interest, rents and all other operating expenses earned by the business excluding loss of rents specifically insured under that coverage.

3.  Additional Expense necessarily incurred in continuing normal business activities as a result of loss to building and contents by perils insured against in Part I.

> Additional Expense is defined as the excess of the total cost of conducting business activities during the period of restoration over and above the total cost of such activities during the same period had no loss occurred, excluding however: a. any loss of profit or earnings; b. any direct or indirect loss or damage to property; c. any expense for physical property unless incurred to reduce additional expense loss and then not to exceed the amount by which the loss is reduced, with due consideration for the salvage value of such property.

It is evident that under these provisions American Casualty is responsible only for rental losses and rental loss prevention expenses attributable to "perils insured against in Part I."

Section A of Part I provides coverage for the building and service equipment, but section B excludes from coverage that "[p]roperty which is more specifically insured in whole or in part under this or any other contract of insurance." Part I also contains a special "all risk" endorsement, which provides that "coverage is hereby extended to include direct loss to Coverage I–Building(s) from all risk of physical loss except as hereinafter excluded." Subsection 14 of this endorsement, however, excludes loss "[t]o any property more specifically insured."

The interpretation of these provisions urged by American Casualty and adopted by the lower court proceeds as follows. Since the transformer is "property more specifically insured" in Part VIII, it is property excluded from coverage both under Part I and under the special all risk endorsement to Part I. Since the transformer is not covered by either Part I or the all risk endorsement, rental losses and rental loss prevention expenses attributable to damage to the transformer are not covered by Part II, for Part II only covers losses and expenses attributable to "perils insured against in Part I."

In opposition to this interpretation, Lafayette argues that the all risk endorsement expands the coverage of Part I, *see*

*Miller v. Boston Insurance Company*, 420 Pa. 566, 218 A.2d 275 (1966), with the result that coverage under Part II is also expanded. Lafayette argues that this expansion is not precluded by the exclusion in the all risk endorsement of loss "[t]o any property more specifically insured." According to Lafayette, this exclusion only excludes loss incurred because of damage to the property itself; if American Casualty had intended to limit its liability for rental losses and rental loss prevention expenses, it should have excluded not only losses *"[t]o any property more specifically insured,"* but also losses *"arising from or because of* damage to any property more specifically insured." Thus in Lafayette's view, only what might be called direct loss to specifically insured property is excluded; indirect loss attributable to such direct loss, as, for example, loss of rentals and rental loss prevention expenses, is not excluded, and therefore may be recovered under Part II.

We are unable to say that Lafayette's interpretation of the "property more specifically ensured" exclusion is clearly wrong. It seems to us to create an ambiguity in the policy, which upon appropriate testimony might be resolved in Lafayette's favor. The policy was a negotiated one; evidence of what was said in the course of the negotiations, of practices in the insurance business, and of the parties' knowledge of those practices, might resolve the ambiguity, or might show that in fact there is no ambiguity. Accordingly, we shall reverse the lower court's order granting summary judgment for American Casualty.

Having said so much, however, we are obliged to note another exclusion in the policy. Section A of Part VIII provides in pertinent part that American Casualty agrees to pay for losses to Lafayette's property directly damaged by an accident to machines, "excluding . . . (e) loss from delay or interruption of business or manufacturing or process, (f) loss from lack of power, light, heat, steam or refrigeration and (g) loss from any other indirect result of an Accident." At first glance, this provision, especially subsection (e), would seem to have a great bearing on Lafayette's

claim, and yet neither party has offered an interpretation of the provision, nor has the lower court. In these circumstances we shall do no more than note the provision as perhaps relevant, leaving any consideration of it to the further proceedings that will ensue upon remand.

Reversed and remanded for proceedings consistent with this opinion.

HESTER, J., files a dissenting statement.

HESTER, Judge, dissenting:

I dissent. I would affirm on the reasoning set forth in the Opinion of Judge Prattis of the court below.