## McCright v. Mercer County Area Vo-Tech. School

*William J. Madden,* for plaintiffs.

*James A. Stranahan, III,* for defendant Mercer County Area Vocational Technical School.

*Williams C. Robinson,* for defendant Brodhead-Garrett Co.

ACKER, *J.,* April 15, 1982 — This matter is again before this court upon a motion for summary judgment. We previously found the motion for summary judgment of Mercer County Vocational Technical School improperly filed prior to the completion of the pleading stage. It was therefore denied with the right to reassert it after the parties had a full opportunity to complete their pleadings, take depositions, interrogatories and admissions. All that has now occurred and the matter is properly before the court for disposition upon a motion for summary judgment. Plaintiff has filed an answer to the motion.

The issue centers upon whether the Mercer County Area Vocational Technical School, hereinafter call Vo-Tech, can successfully assert immunity under the Political Subdivision Tort Claim Act, hereinafter known as "act".[1] Plaintiff by

---

1. The motion for summary judgment of Vo-Tech claims immunity under the Political Subdivision Tort Claim Act, 1978, known as Act 330, Nov. 26, 1978, P. L. 1399 [53 P. S. 5311.101 et seq. pocket parts]. This statute was repealed by

its answer to defendant's motion for summary judgment claims that it fits within one of the exceptions in that certain provisions of the act are unconstitutional as they relate to plaintiff's claim.

Plaintiff was a student on May 17, 1979, of Vo-Tech. Vo-Tech is a public vocational school situate at Route 19, Mercer County. Therein is a welding shop and an air conditioning shop separated by a common classroom. In the spring of 1978 a "Di-Acro" shearer was bolted to the floor in the welding shop and was used as a portion of the equipment of the welding shop for the benefits of the students. It was elected by Vo-Tech to move the shearer from the welding shop to the air conditioning shop with the intent of using it in the air conditioning shop. To accomplish the move a forklift was used to carry it into the air conditioning shop where it was placed, but not bolted to the floor. The welding shop sutdents, however, continued to use the shearer in the air conditioning class. On May 17, 1979, minor plaintiff, Keith McCright, attempted to use the shearer for he was required to cut a piece of metal to a specified size and weld the two pieces together. He inserted the piece of metal in the shearer located in the air conditioning shop, pulled the handle and the shearer toppled over causing serious personal

---

the Judicial Code and is replaced by the Act of 1980, Oct. 5, P. L. 693, No. 142, Sec. 221(1) [42 Pa. C.S. §8542] which became effective 60 days after Oct. 5, 1980. The matter is controlled by the statute which was effective May 17, 1979, when the accident occurred. Therefore the Politicial Subdivision Tort Claim Act of 1978 is applicable. The language of that act, however, is identical with the Act of 1980 setting forth when a political subdivision can be sued because an injury resulted from the use of "real property" except that "politicial subdivision" has been replaced by "local agency". We take this to be of no consequence in the resolution of the case.

injuries resulting in the amputation of four of his toes. Defendant admits paragraph 7 of plaintiff's complaint which states,

"The shearer herein before referred to was purchased by the defendant for inter alia use by its students as part of the training and technical education procedures of the defendant, and as such, was an integral and necessary component of the school business conducted by the defendant, to-wit, the technical education of its students."

The shearer in the air conditioning class was available for use by students in the welding class and they were specifically allowed to use the shearer to cut aluminum. In response to an interrogatory the defendant stated,

"It (the shearer) had been moved and was in the process of being installed in the air conditioning room. The machine was temporarily sitting in the back of the room."

## DISCUSSION

I. Can The Plaintiff Establish That His Cause of Action Falls Within The Exception To Denial of Recovery Due To Governmental Immunity Because The Negligence Alleged Deals With Care, Custody and Control Of Real Property?

Section 201 of the Politicial Subdivision Tort Claims Act of 1978 provides that no political subdivision shall be liable for any damages on account of any injury to a person or property caused by any act or omission of the political subdivision or an employee thereof or any other person.[2] Liability may be imposed for damages on account of an injury to a per-

---

2. Section 221(1) of the Act of 1980 [42 Pa. C.S. §8541] is identical except that "local agency" is transposed for "political subdivision."

son or property if the damages would be recoverable under common law or a statute if the injury was caused by a person not having available governmental immunity and was caused by "negligent acts or omissions" as a result of Section 202(b)(3),

"The care, custody or control or real property in the possession of the political subdivision. . . "[3]

Plaintiff argues that the shearer even though not attached to the floor at the time of the accident falls within the definition of "real property" and is therefore an exception. The contention is that the shearer is within the "Assembled Industrial Plant Doctrine." Further, in that the "Act" does not define "real property," nor is it defined in the Statutory Construction Act of 1972,[4] it must be construed according to the rules of the Statutory Construction Act.[5] The term "real property" must be taken according to its common and approved usage. The plaintiff acknowledges that there is no reported case in Pennsylvania where a public school was held to fall within the "Assembled Industrial Plant Doctrine." In fact, none have been found where it was ever attempted. The Assembled Industrial Plant Doctrine has been applied in numerous factual situations in our Commonwealth where varied objectives were sought. A common instance where the principal has been applied is eminent domain.[6] It

---

3. The Act of 1980 contained in the Judicial Code [42 Pa. C.S. §8542] is identical except that "local agency" has been substituted for "political subdivision."

4. Act of 1976, July 9, P. L. 877, No. 160, Sec. 2, [1 Pa. C.S. §1991].

5. Act of 1972, Dec. 6, P. L. 1339, No. 290, Sec. 3, [1 Pa. C.S. §1903].

6. Singer v. Oil City Redevelopment Authority, 437 Pa. 55, 261 A.2d 594 (1970). Gottus v. Allegheny County Redevelopment Authority, 425 Pa. 584, 229 A.2d 869 (1967).

has been applied in a determination of whether property is to be included in tax assessment.[7] Further, it has been used to determine whether a property is subject to a lien,[8] or a mortgage.[9]

In addition to other examples of its applications the Doctrine has been used in cases where the issue was immunity from tax. Defense Plant Corporation Tax Assessment Case, 350 Pa. 520, 39 A.2d 713 (1944), affirmed 328 U.S. 204. Homestead Borough v. Defense Plant Corp., 356 Pa. 500, 52 A.2d 581 (1947).

Under the doctrine if the article, whether it be fast or loose, be indispensible in carrying on the specific business, it becomes a part of the realty. Where such a chattel in a plant has been taken elsewhere for temporary use, it does not lose its character as being a part of the assembled plant. Titus v. Poland Coal Co., 275 Pa. 431, 119 A. 540 (1923). An item such as a lathe which becomes a necessary part of the machinery for carrying on the business of the machine shop belongs to the manufactory whether bolted to the floor or not. Christiana v. Dripps, 28

---

7. Streyle v. Board of Property Assessment, Appeals and Review, 173 Pa. Super. 324, 98 A.2d 410 (1953). Kinkella v. Board of Property Assessment, Appeals and Review, 173 Pa. Super. 329, 98 A.2d 413 (1953). Penn-Lehigh Corporation Appeal, 191 Pa. Super. 649, 159 A.2d 56 (1960). United Laundries, Inc. v. Board of Property Assessment, Appeals and Review, 359 Pa. 195, 58 A.2d 833 (1949). Northside Laundry Co. v. Allegheny County Board of Property Assessment, Appeals and Review, 366 Pa. 636, 79 A.2d 419 (1951), appeal dismissed 342 U.S. 803, 72 S. Ct. 46, and Messenger Publishing Co. v. Allegheny County Board of Property Assessment, Appeals and Review, 1983 Pa. Super. Ct. 407, 132 A.2d 768 (1957).

8. Land Title Bank & Trust Company v. Stout, 339 Pa. 302, 14 A.2d 282 (1940).

9. Roos v. Fairy Silk Mills, 334 Pa. 305, 5 A.2d 569 (1939).

Pa. 271, 279 (1857). A discussion of the type of cases in which it is used and the history of the Assembled Plant Doctrine is found in Gottus v. Allegheny County, supra. There it is noted that the doctrine applies to a case involving a subsequent sheriff's sale purchaser, an unpaid chattel vendor, and a trustee in bankruptcy. But the evidence must warrant the conclusion that the machinery involved was vital to the business operation and was a permanent installation.

Plaintiff argues that the test should be the common and approved usage of the words "real property." This is in accordance with the declaration of our Supreme Court in Northside Laundry Co. v. Allegheny County Board of Property Assessments, supra. There on page 640, it is stated,

"The law can do not better than to define an industrial plant as that type of establishment which the ordinary man thinks of as such."

The court then gives instances of types of buildings and structures which the ordinary man would regard as not being within the Industrial Plant Doctrine. Examples listed are a bank building, hotel, and theatre. It further states that although we speak of the "movie industry," the "hotel industry," or the "banking industry," this is merely a loose use of language to convey the idea that a particular business is a sizeable one. In spite of that we do not speak, the court held, of buildings housing such businesses as "industrial plants." The entire thrust of the Assembled Plant Doctrine is that it must be manufacturing or industry.[10]

10. Streyle v. Board of Property Assessment, Appeals and Review, supra. Singer v. Oil City Redevelopment Authority, supra, where it is held the machinery must be vital to the business operation of the industrial plant. Penn-Lehigh Corp. Appeal, supra. United States v. 252.36 Acres of Land, 336 Fed.

The Industrial Plant or Assembled Economic Unit Doctrine has not been applied to schools or other governmental endeavors. The policy considerations that caused the rule to be applicable to eminent domain, tax, mortgage or lien cases is entirely foreign to that contended by plaintiff, nor can it be convincingly argued that the ordinary man thinks of a school building as an industrial plant.

Wherefore, we hold that the machinery involved in this case is not "real property" within the Assembled Industrial Plant Doctrine.

The fact that a school does not fall within the Assembled Industrial Plant Doctrine does not mean that the shearer in this case cannot be regarded as realty even though severed from the land. In Defense Plant Corp. Tax Assessment Case, 350 Pa. 520, 39 A.2d 713 (1944) at page 525, it is noted that the majority of the states hold attachment of property may be constructive and need not be physical to the extent removal will result in serious damage to the remaining freehold. In Bouvier's Law Dictionary under real property, it is stated that there are a large number of articles known as fixtures which, though orginally wholly moveable and personal in

---

Sup. 667 (W. D. Pa. 1972) where in interpreting Pennsylvania law, it concludes that it is necessary that the machinery involved be vital to the business operation and permanently required for functioning. Although the machinery may not be involved in the manufacturing establishment to be within the Industrial Plant Doctrine, it must be used in industry. In Re: Ginsburg, 255 Fed. 2d 358 (3rd Circuit 1958). In Titus v. Poland Coal Co., supra, at page 436, it is held that the article must be indispensible in carrying on a specific business to be part of the realty. In discussing the assembled Plant Doctrine in Gottus v. Redevelopment Authority of Allegheny Co., supra, at page 589, it is stated that for the doctrine to apply to machinery of a laundry, it must be for the "economic integrity of the industry whose property is condemned. . . ."

their nature, have acquired by their being attached to the real estate or applied to its use in connection with it, the character of realty.

In examining cases in Pennsylvania other than those decided through the Industrial Plant Doctrine[11] it is recognized that property severed or removed from the realty may still be regarded as realty. Rogers v. Gilinger, 30 Pa. 185 (1858) involved portions of a building which had blown down. The issue was whether the materials from the building scattered about the property were still to be regarded as realty. The court held at page 188.

"Nor will a severance by the owner of that which was a part of the realty, unless the severance be with the intent to change the character of the thing severed, and convert it into personalty. . . ." is realty.

Goodrich v. Jones, 2 Hill 142, involved material used on a farm which had been part of a fence and had been temporarily detached without the intention to divert the property from such use. It was regarded as a part of the freehold and as such, passed by conveyance of the farm to the purchaser. The court quoted Rogers, supra, at page 188,

"The true rule would rather seem to be, that which was real shall continue real until the owner of the freehold shall by his election give it a different character."

The Rogers rule was applied in Leidy v. Proctor, 97 Pa. 486 (1881). The principle is also recognized in 35 Am Jur 2d, Sec. 26, page 721 that the mere physical separation of an object from the real estate for some temporary purpose will not suffice to change its character.

---

11. The Industrial Plant Doctrine had its genesis in Voorhis v. Freeman, 2 W. & S. 116 (1841).

All items of personal property are of course not fixtures. A fixture is an article of personal property which by reason of physical annexation to a building becomes on legal contemplation part of the real estate. O'Donnell v. Schneeweis, 73 D.&C. 2d 400 (1975). In deciding whether personal property is annexed to the realty, a paramount consideration is the intention of the parties of the time of placing the chattel on the realty. Kinnear v. Scenic Rys. Co. of Am., 223 Pa. 390, 72 A. 808 (1909), Wick v. Bredin, 189 Pa. 83, 42 A. 17 (1899). In Re: Universal Medical Services, Inc., 460 Fed. 2d 524 (3rd Circuit 1972). The intention is determined from the overt actions and objective manifestations of the parties. 16 P.L.E. Fixtures, page 330. If there is not an agreement or an expressed intention that the property will be subsequently removed and that it shall be regarded as personal property attachment to the realty other than by its weight has been held prima facie to be part of the real estate. Cedar Ave. Building & Loan Assn. v. McLaughlin, 60 Pa. Super. 73, 97 Atl. 685 (1918). However, mere physical annexation is no longer a sole determining test for it is that which is intended by the parties. Harmony Building Assn. v. Berger, 99 Pa. 320 (1882), Harrisburg Electric Light Co. v. B. & E. Goodman, 129 Pa. 206, 19 A. 844 (1889).

This matter comes before this court on a motion for summary judgment by defendant. A summary judgment can be granted only where there is no genuine issue as to any material fact. It must be clear that the party is entitled to judgment as a matter of law. Thompson Coal Co. v. Pike Coal Company, 488 Pa. 198, 412 A.2d 466 (1979). Innovate, Inc. v. United Parcel Service, Inc., 275 Pa. Super. 276, 418 A.2d 720 (1980). Allen v. Colautti, 53 Pa. Commw. 392, 417 A.2d 1303 (1980). A summary

judgment should be granted only where the issue is clear and free from doubt. Horowitz v. American Casualty Co. of Reading, 277 Pa. Super. 61, 419 A.2d 660 (1980), and only in the clearest of cases. Hankin v. Mintz, 276 Pa. Super. 538, 419 A.2d 588 (1980). The record must, of course, be viewed in the light most favorable to the non-moving party. Thompson Coal Co. v. Pike Coal Co., supra. Allen v. Colautti, supra. In so viewing the facts in the instant case, Robert Brown, the Director of Vocational Education of defendant answered interrogatories on August 28, 1980. There he stated that the machine had been bolted to the floor before the accident pursuant to the manufacturer's instructions by employees of Vo-Tech, that it had been moved and was in the process of being installed in the air conditioning room when the accident occurred, that it was temporarily sitting in the back of the room. Therefore, it is clear from those statements that the owner, Vo-Tech, continued to regard the property as a portion of the realty for it was to be reattached to the realty and was merely temporarily unattached albeit a one-year period.[12]

---

12. The answer to interrogatories is directly contrary to the testimony of the employees of Vo-Tech. Frank Viglio, the air conditioning instructor, testified by deposition, that he had tested the shearer when it had been brought into his shop by a highlift and found that the blade was broken. This occurred in the spring of 1978. Further, that the machine was intended to be moved into storage because of the lengthy time it was required to get another blade. He acknowledged that he could not make the decision of moving the machine, but that he had been informed of this by Mr. Ruzanic, the principal of the school. Leon D. Powell, the welding instructor, stated that the machine was never bolted to the floor, but rather was bolted to angle irons on the feet of the machine 30 to 32 inches long, and that it could have been moved but it could not tip over due to the feet. It would appear, therefore, that a jury question exists as to the true facts in this regard.

We do not pass upon the constitutionality of the Political Subdivision Tort Claim Act, supra. In Re: "B", 482 Pa. 471, 394 A.2d 419 (1978). Commonwealth v. Staley, 476 Pa. 171, 381 A.2d 1280 (1978). Wherefore, it is concluded that the motion for summary judgment must be denied.

## ORDER

And now, this April 15, 1982, it is hereby ordered and decreed that the motion for summary judgment of Mercer County Area Vocational Technical School is denied.